JOHN LIPSCOMB v. J. H. POSTELL, judge, &c., use of O. VAN VACTER and WIFE.

1. JUDGMENTS: ON WHOM BINDING.—Judgments are conclusive evidence only against parties and privies.
2. SAME: WHO ARE PARTIES.—All persons are bound as parties to a judgment who have the right to control the proceedings in the cause, to make defence,

to adduce and cross-examine witnesses, and to appeal from the decision when an appeal lies.

3. SAME: WHO ARE PRIVIES.—Privies are those who stand in mutual or successive relationship to the same rights of property,—as heir and ancestor, executor and testator, administrator and intestate, donor and donee, copartners and joint tenants, &c.; and unless such a relationship in reference to the property which is the subject-matter of a suit, exists between a party to the suit and another, the latter is not concluded by the judgment.

4. SAME: NO PRIVITY BETWEEN EXECUTOR, ADMINISTRATOR, ETC., AND HIS SURETY.—There is no privity existing between a guardian, executor, or administrator, and his surety, on his official bond, and hence, in the absence of a special stipulation to that effect in the bond, a judgment against the former will not conclude the latter.

5. PRINCIPAL AND SURETY: HOW CONTRACT OF SURETY CONSTRUED: CASE IN JUDGMENT.—The obligation of a surety is to be strictly construed, and his liability is not to be extended beyond the plain meaning of the terms of his contract, nor are incidents to be annexed to it which are not necessarily deducible from the language employed; and hence a surety of an executor will not be held to have contracted that he would be concluded by a judgment rendered against his principal by the stipulation in the bond that the executor "will well and truly pay and deliver the legacies named in the will so far as the law will charge him."

6. SAME: DECREE AGAINST EXECUTOR, PRIMA FACIE EVIDENCE AGAINST SURETY.—In a suit against a surety on the bond of an executor, &c., a judgment against the principal in the Probate Court is admissible in evidence against the surety as a part of the *res gestæ*, and as the unsolemn admission of the principal: and hence, it is only *prima facie* evidence against the surety.

7. EVIDENCE: PROBATE COURT: DEPOSITIONS NO PART OF RECORD EXCEPT ON APPEAL.—The depositions taken in a suit in the Court of Probates are not necessarily a part of the record, except upon appeal to this court.

8. EVIDENCE: RECORD IN COURT BELOW ORIGINAL EVIDENCE.—In a suit upon an executor's bond to recover the amount of a decree rendered against the executor in the Probate Court, the record of that proceeding remaining in that court is the original and best evidence of the rendition of the decree: and a copy certified by the clerk of this court of the said record, as it was transmitted to this court upon appeal, is merely secondary evidence, and cannot therefore be admitted in evidence except upon proof of loss or destruction of the original.

ERROR to the Circuit Court of Madison county. Hon. E. G. Henry, judge.

This was an action instituted in the name of the probate judge, for the use of Owen Van Vacter and wife, against John Lipscomb,

as surety of one A. A. McWillie, on his official bond as executor of Ann McWillie, deceased.

The breach of the bond, assigned in the declaration, is the failure of said executor to comply with a final order of the Court of Probates, directing said McWillie to deliver over to Mrs. Van Vacter certain slaves and other personal property bequeathed to her by the testatrix, or to pay the value thereof; also his failure to pay the hire of said slaves.

The bond on which the suit is brought, is dated 15th January, 1845, and is in the form and to the effect prescribed by the statute (see Hutch. Dig. p. 653).

The condition of the bond is, in substance, that the executor shall make and return a true and perfect inventory of the estate; that he will administer the estate according to law, and that he shall "make a just and true account of his actings and doings therein when thereunto required by the said (Probate) Court;" and that he shall "well and truly pay and deliver all the legacies contained and specified in the said will, as far as the said goods, chattels, and credits will extend, according to the value thereof, and as the law shall charge him."

The defendant pleaded, 1st. A general denial, and the following special pleas:

2d. "That the said negro slaves mentioned in said complaint, and included in said pretended legacy of said Ann McWillie to the said Ann J. McKey (now Mrs. Van Vacter), had been by said Ann McWillie, during her lifetime, duly conveyed to Sarah J. McWillie, by deed bearing date the 25th day of April, A.D. 1842; and the defendant says that the negro slaves and other property mentioned in the said pretended legacy, were not assets of the estate of the said Ann McWillie, and could not be delivered to said plaintiff's usees. And this he is ready," &c.

To this plea the plaintiff demurred, generally, and his demurrer was sustained; and thereupon, under leave granted, the defendant filed his third and fourth pleas, as follows:

3d. "And for further plea, &c., the defendant says, that the slaves and other chattels in plaintiff's declaration mentioned, were, at the time of the death of the said testatrix, Ann McWillie, the property, and in the possession of Sarah J. McWillie, and the same

were never in possession of the said Abram A. McWillie, her executor as aforesaid; wherefore it is, and ever has been, impossible for said Abram A. McWillie, executor as aforesaid, to deliver over said slaves and other chattels to the said plaintiff's usees, in accordance with said supposed decree of said Court of Probates: And this he is ready," &c.

4th. "And for further plea, &c., said defendant says, that the said Abram A. McWillie, executor as aforesaid, well knowing the title and possession of said slaves and other chattels mentioned in said supposed decree of said Court of Probates to be in one Sarah J. McWillie, neglected and omitted to prove to said Court of Probates, that said title and possession of said slaves and other chattels were in her, the said Sarah J. McWillie, and were not of the assets or estate of the said testatrix; whereby said supposed decree of said Court of Probates was rendered against said Abram A. McWillie, and that the same is fraudulent and void as to this defendant. And this he is ready," &c.

To each of these pleas the plaintiff demurred.

He assigned as cause of demurrer to the third plea:

1st. That it was insufficient to bar plaintiff's action; and 2d. That it was argumentative.

The ground of demurrer assigned to the fourth plea, in addition to the general demurrer, were:

1st. That it does not allege any participation or complicity on the part of plaintiff's usees, in the neglect and omission of the executor.

2d. It is argumentative.

3d. The plea is double, in stating the omission and neglect of the executor as one substantive ground of defence; and fraud in procuring the decree as another ground of defence; and if the latter allegation is intended merely as a legal conclusion, then the plea is argumentative.

The demurrers to these pleas were sustained, and the cause submitted to a jury on the issue joined on defendant's first plea.

On the trial, the plaintiff read in evidence from the records of the Probate Court the petition of Van Vacter and wife, against McWillie, for the payment of the legacy; the citation issued thereon, and its return of "executed;" the demurrer of McWillie; a mandate of the High Court overruling said demurrer; the answer of Mc-

Willie; the decree of the Court of Probates directing distribution and payment; a mandate from the High Court affirming this decree. The substance of which will be found in the report of the cases of *Mc Willie* v. *Van Vacter*, 35 Miss. R. 429, and *Van Vacter* v. *Mc Willie*, 31 Ib. 563; and all the remaining orders and papers in said cause, except the depositions of the witnesses; also the will of Ann McWillie and the record of its probate.

When each of these several orders and papers were read, the defendant objected, because the whole record was not introduced; and the court overruled his objection, and he excepted.

The decree of the Court of Probates directed the executor to deliver over the slaves sued for, and to pay hire, which was fixed by the decree; and in default of delivery of the specific property, then it was decreed, that he should pay the value of it as assessed in the decree. The will of Ann McWillie bequeaths to Mrs. Van Vacter the slaves embraced in said decree.

The defendant offered in evidence a certified copy of the record of the Probate Court, as it was filed and made a part of the record in this court. This copy was certified by the clerk of this court; but, on objection by plaintiff, this was excluded, and the defendant excepted.

The plaintiff had verdict and judgment, as claimed in his declaration; and the defendant moved for a new trial, which being refused, he sued out this writ of error.

*F. Smith,* for plaintiff in error.

I. The surety towards the principal, bears the relation to him in civil cases, that the accessory to the principal does, in criminal proceedings. The judgment against the principal in either case is but *prima facie* binding on the surety or accessory, and the latter is at liberty to show, by the same facts or by extrinsic facts (or both), that the principal ought not to have been convicted or condemned to pay the amount awarded against him. 1 Archbold (Waterman's, 6th edition), 18, note 1; 3 Greenleaf's Ev. § 46, p. 46–47; *Commonwealth* v. *Knapp*, 10 Pick. 484; *Byrd* v. *State*, 1 How. 174; *Douglass* v. *Howland*, 24 Wendell, 35; *Jackson* v. *Griswold*, 4 Hill, 522; *Morris* v. *Lucas*, 8 Blackford, 9.

II. Nobody can be bound by a judgment to which he was not a

party, unless the proceeding be *in rem.* 1 Greenleaf's Evid. § 525; *Stewart* v. *Board of Police,* 3 Cushm. 479; *Ridley* v. *Ridley,* 2 Ib. 656.

III. The Probate Court had no jurisdiction over Lipscomb. He bore no official relation to that court, and could neither avail himself of a judgment in his favor or be bound by it. *Hill* v. *Hardy & Williams,* 5 George, 289; *Henderson* v. *Winchester,* 2 Ib. 292–294; *Duncan* v. *Hogue,* 2 Cushm. 674; *Jiggitts* v. *Bennett,* 2 George, 610, 611.

How is it possible, under our system, that a party cannot be a party to a proceeding; and yet cannot contest the subject-matter of the suit when he is sued ?

IV. The Probate Court has no jurisdiction to try a fraud. *Hart et ux.* v. *Dunbar,* 4 S. & M. 287 ; *Green* v. *Creighton,* 10 Ib. 163.

Nor to adjudicate on a question of contract. *Holloman* v. *Holloman,* 5 Ib. 559–563 ; *Bisland* v. *Hewett,* 11 S. & M. 169.

Consent cannot give jurisdiction in such cases. *Brown et al.* v. *Bank of Mississippi,* 2 George, 454, 455, 459, 460.

V. The plea that the judgment in the Probate Court was obtained by McWillie's fraudulent neglect, was a complete bar to the action. There need not have been any averment of fraudulent collusion with the plaintiff's usees. The fraud of McWillie on his surety and the court, was a complete bar of itself.

So held in the leading case as originally reported in Leach's Criminal Cases, and the Duchess of Kingston's Case. 1 Leach's Cases, London edition, 1792, case 76, p. 132–134.

*T. C. Tupper,* on same side.

I. The court below erred in permitting the plaintiff to read in evidence, before the jury, the original papers in the case of *Van Vacter and Wife* v. *A. A. McWillie,* in the Probate Court, without producing the whole record; thereby seeking to prove a record by the production of shreds and patches, and the oral testimony of the clerk of the Probate Court, who had no personal knowledge of these proceedings, not having been in office at the time. This, certainly, was not the best evidence the case was susceptible of, and therefore should not have been admitted. A record can be proved only by itself, or by an authenticated transcript. But the

defendant below proposed to cure this error by offering in evidence an authenticated transcript of the record of the whole proceedings in the Probate Court, upon which this suit was founded. This was, however, excluded from the jury by the court below; and the defendant was thus deprived of the benefit of having the whole record before the jury. This transcript is set out in full in the bill of exceptions.

For these errors alone, we contend the judgment must be reversed.

II. But the main fundamental question touching the merits of this cause is, whether the court below was justified in admitting in evidence the decree of the Probate Court against McWillie as conclusive, in all respects, against this defendant. We contend that this was erroneous for three reasons: First. This defendant was neither a party nor a privy in that proceeding; Secondly. The court, in rendering the decree, was misled as to the facts of the case, and the decree was procured by fraud; and Thirdly. It was a decree assessing damages by the Probate Court against McWillie, for failing to perform his duty as executor in making distribution of the property of his testatrix.

1. Lipscomb was not a party to the proceedings in the Probate Court. He cannot, therefore, be affected by the decree against McWillie, unless he comes under some of the exceptions to the general rule on this subject. He had no notice of these proceedings, and could not have become a party thereto if he had had notice. Was he a privy? He certainly was not a privy in blood, nor a privy in estate, nor a privy in law, according to the definition of the books. 1 Phil. Ev. p. 324. He had not made himself a privy by his covenant, farther than to guarantee the performance of his duty by the executor.

A decree against the principal is not evidence against a guarantor, unless he had notice of the suit and an opportunity to defend in the name of the principal. *Douglass* v. *Howland*, 24 Wendell, 35; 3 Phil. Ev. p. 984, notes.

It is true that cases are cited in the above note to Phil. Ev. from the South Carolina courts, where, in case of sureties upon an administration bond, the decree against the administrator has been admitted as *prima facie* evidence against the surety on his bond.

It has been held in Kentucky (*Hobbs* v. *Middleton*, 1 Dana, 176), that a judgment in favor of a creditor against an administrator, is conclusive against the security on his official bond. This is cited and controverted in the above well-considered opinion of Cowen, J., in *Douglass* v. *Howland*, and cases are cited from Ohio, Pennsylvania, and Virginia, where such judgments or decrees against the principal are at most *prima facie* evidence against the surety. See 5 Binney, 184; 2 Rand. 313; 2 Leigh, 393; *Ohio* v. *Colerick*, 3 Ham. R. 487.

Even under the civil law such decrees would not be conclusive against the sureties. *Lartique* v. *Baldwin*, 5 Martin, La. R. 193.

It is sufficient for our present purpose to contend that the decree of the Probate Court against McWillie, should have been admitted only as *prima facies* against Lipscomb, for then we should have been permitted to prove under our pleas that it was impossible to deliver the property specified in the decree, as it was owned and held adversely at the death of the testatrix, and never went into possession of her executor. This proof was offered under the general issue, and excluded from the jury.

But it is held in North Carolina and other States, in analogous cases, that in a suit against the surety, the judgment or decree against the principal is wholly inadmissible as evidence against the surety. See opinions of Taylor, Ch. J., and Hall, J., in *McKellar* v. *Bowell*, 4 Hawks, 34.

In the above case, the well-settled rule is cited " that no record can be given in evidence but such whereof the benefit may be mutual, that is, such as might be given in evidence either by plaintiff or defendant." Now it will not be contended for a moment that, had the Probate Court held that the slaves in controversy belonged to Mrs. S. J. McWillie under the deed, the Circuit Court would have been controlled by such a decision. This court has held in similar cases that a decree in favor of. an administrator in the Probate Court, is not conclusive on the creditor in a suit on the administrator's bond, though the creditor was a party to the proceeding in the Probate Court.

2. The fourth plea should have been sustained, alleging that this decree had been procured by fraud. We had the right to show

that the Probate Court was misled. See Duchess of Kingston's case, in 2 Smith's Leading Cases, side p. 424.

3. The decree was introduced in this case to prove the value and hire of the slaves in controversy, as assessed by the probate judge; in other words, the damages assessed against McWillie for the non-performance of his duty as executor. This was clearly beyond the jurisdiction of that court. This was a matter, not in regard to the administration of an estate, nor in regard to the estate itself, but in reference to rights growing out of the estate, arising from the supposed non-fulfilment of his duty by the executor. See *Hart* v. *Dunbar*, 4 S. & M. 287; also, as to jurisdiction of Probate Court, *Burnett* v. *Strong*, 26 Miss. R. (4 Cushm.) 116.

*Nye* and *Hill* for defendant in error.

There is no error in sustaining the demurrer to the second, third, and fourth pleas.

We do not think that by sustaining the demurrer to these pleas, that the court has necessarily held that the judgment or decree of the Probate Court against the executor is necessarily conclusive against the sureties on his bond; still, as opposing counsel have argued on that basis, we will accept their views in that respect for the present. In ordinary suits against ordinary sureties, such as indorsers and guarantors of promissory notes, &c., it is true the judgment against the principal would not be conclusive, perhaps not *prima facie* evidence against the surety, but this is not that kind of suretyship. Our surety (Lipscomb) entered into bond, conditioned that A. A. McWillie, the executor, "would well and truly pay over and deliver the legacies, as far as the law would charge him," and "make a just and true account of his actings and doings when thereunto required by the said court."

The executor alone is responsible to the Probate Court. That forum alone can settle the question of what is a legacy; that is cognizable only in that court. The Probate Court directs and orders McWillie to pay over the legacy; and then on McWillie's failure to deliver the legacy, the surety is liable to a suit on his bond: he has undertaken that McWillie shall do this, and when there is a judgment or decree against him, which he fails to execute, his surety is liable. The judgment or decree of the Probate Court in this action

may only be *prima facie* evidence, and the surety may show that it was rendered by fraud and collusion, as is said in 2 Bailey, 381.

New entries made by an officer in a book in the course of his business or office, and also his admissions, are evidence, *prima facie*, against his surety, but not conclusive, and to this effect are *Mann* v. *Yazoo City*, 31 Miss. R. 574; 3 Brod. & Bingham, 132; 8 Barn. & Cress. 556; 10 Ib. 317 (all cited in the case of *The State* v. *Stewart*, Opinion Book H. p. 508). And it was on that principle that this court decided in *State* v. *Stewart*, Opinion Book, 508, the demurrer to the second replication, and also the instruction asked by plaintiff in error.

The second replication set up in substance that the inventory was conclusive against the surety in the guardian's bond, and the court sustained a demurrer to it.

And plaintiff also asked the court to instruct the jury that the inventory was an estoppel, and this the court below refused to do; and this court, in their opinion, say that the court below was right, and that the inventory was an estoppel. That is the extent of that decision, and does not touch this question. But in *Singleton* v. *Garrett and T. Jones Stewart, surety*, 23 Miss. R. 195, this court has in effect decided this question: that was a suit against the administrator and his surety (Stewart).

Stewart, the surety, as well as Garrett, the administrator, attempted by plea, in a suit brought on the bond, to question the propriety of the final decree made by the Probate Court; and this the court say (Chief Justice Sharkey) cannot be done in the Circuit Court. Now that plea was filed by Stewart, and that was the state of case before the court, and it was on demurrer to his plea, and the court reverse the case. Something is said about the decree being conclusive on the administrator; but that means conclusive on him as distinguished from the distributee, and does not mean as distinguished from the surety, for the surety was the person filing the plea and before the court. There is no conflict between this case and the more recent case of *State* v. *Stewart*, Opinion Book H. 508, when considered in reference to the point before the court.

Again, it is insisted that the court erred in admitting the record, or parts of the record, from the Probate Court, in the case of *Van Vacter and Wife* v. *Mc Willie*.

Our view of that is this, and our answer is twofold. First, we did offer the entire record in fact; and, secondly, that the law does not require that the entire record should be offered. Where the suit is brought directly on a record, the whole record should be offered; but this suit is brought on the bond, and the decree of the Probate Court, directing McWillie to pay over the legacy, is mere inducement to the action, and is a collateral fact, and in that class of cases it is only necessary to read so much of the record, as shows that the court had jurisdiction; otherwise, if the suit had been brought on the record.

But in point of fact, the whole and entire record of the Probate Court was read, and to this point we invite the special attention of the court.

Now the court will observe, that no objection was taken to reading from the papers in the case, and from the various orders, on the ground that there should be read only a copy under the certificate of the clerk; but the sole objection throughout was that the whole record was not read, though, in reply to the objection, it will be seen, from the bill of exceptions, that plaintiff's counsel announced that he did intend to read the whole record, and the clerk stated, under oath, that the papers read by him constituted the entire record. George Ward (probate clerk) swore to the identity of the papers of the record, and also the conclusion of his testimony, on pages 85 and 86 of the record; and he stated, if he were going to make out a copy of the record, the foregoing papers by him read would constitute the record. There is no question about its identity. True, the depositions of Bishop, Henry, and Wilson, were not read, nor were they a part of the record in fact, nor could the defendant have so shown by the Probate Court record.

They are papers filed in the cause, it is true, but never made a part of the record. Now it will be remembered that the only objection presented to each paper and decree as read, was that it was not the entire record. We could only read and offer one at a time, and no objection was made that we could not read from the paper; but the only objection was, we did not read all. We did read all; and they have not shown a single decree or paper that we did not read. No objection was made to the order in which they were read,

as to which would come first or last. It is all there, and no damage has been done, to their prejudice. The case is here on a motion for a new trial, and defendant must show damage or error to his prejudice. Justice has been done, and a new trial will not be granted, unless the rulings during the progress of the trial was to the prejudice of defendant below. It might be otherwise, if the case were brought here on special exceptions taken during the trial, and no motion for new trial made.

The record from the High Court was properly excluded. The best evidence of the record of the case of *Van Vacter and Wife* v. *McWillie*, was the record in Probate Court of Madison county, Mississippi; not a copy from the High Court, which was but a copy of a copy. Besides, it was in nowise pertinent to the issue.

The sole object was to try and get before the jury the depositions of Henry, and Bishop, and Wilson, which were not pertinent to the issue, but might poison the jury.

HARRIS, J., delivered the opinion of the court.

The question presented in this record seems never to have been directly decided in this court. It is therefore to be considered upon principle, with a view to the establishment of a just and uniform rule for future guidance.

The plaintiff in error is a surety on an executor's bond. Judgment was rendered *against the executor* in the Probate Court, in favor of a legatee under the will, for certain slaves claimed to belong to the estate, or their alternate value. The executor failing to comply with the order and decree of the Probate Court, this suit is prosecuted against the plaintiff in error as his surety on the bond; and the non-compliance with the order or decree of the Probate Court, assigned as a breach.

To this complaint, several pleas are filed, substantially averring that the slaves in controversy never were in the possession of the executor as the property of the testator; that he never inventoried them as such, and that they were not in the possession of the testatrix at her death, nor belonged to her estate; setting up title in a third person, and that they were not assets of the estate; and could not, therefore, be delivered according to said order and decree.

To these pleas, there was a demurrer, which was sustained, and final judgment rendered against the surety, the plaintiff in error, and the case brought to this court, by writ of error, to revise that judgment.

It is now insisted that the judgment in the Probate Court against the executor in favor of the usee, in this record, is *conclusive* of all these questions; and that the security cannot be heard to relitigate in this action on the executor's bond, matters which might have been, or were actually litigated in the Probate Court between the executor and this usee, although *the surety* was neither a party to such proceeding, nor had notice of its pendency, so as to enable him to be heard in his defence.

It is admitted, that in ordinary suits against ordinary sureties, indorsers and guarantors, a judgment against the principal would not be *conclusive*, perhaps not even *prima facie* evidence, against the surety; but it is insisted, that *by the terms of the obligation* here sued on, a different rule is established. It is said that the *contract* of this surety is, that the executor " *shall well and truly pay over and deliver the legacies,*" &c., " *so far as the law will charge him;*" that the executor is *alone* responsible to the Probate Court, and that forum *alone* can settle the question of *what is a legacy;* that when the Probate Court *orders* the executor to pay over the legacy, and he refuses, the obligation of the surety attaches, and he is *concluded,* by his *contract,* to deny his liability in law under said contract, for such default of his principal, judicially established by such order or decree against his principal.

As a general rule, the liability of a surety is not to be extended beyond the terms of his contract; incidents and intendments not necessarily deducible from the language employed, are never indulged.

The contract of this surety is, that the executor shall deliver this legacy so far as the law will charge him. He agrees to be liable for the just and faithful administration of the estate belonging to the testator. He does not contract to be bound for the distribution or administration of property not belonging to the estate, or for the neglects, omissions, or misjudgments of his principal, or the agents or officers of the law, in suits to which he was neither a *party nor privy,* and of which he had no notice. He is not

bound to make good the errors of courts, of counsel, or parties by which the property of third persons, not belonging to the estate, are decreed to be subjected to the course of administration without his default. And neither the law, justice, nor common honesty would be promoted by such a construction of his *contract*. There is nothing, therefore, in the nature, or character, or terms of *this contract* of suretyship from which it can be fairly inferred that this surety agreed and covenanted to be bound and concluded by the orders, judgments, or decrees of the probate, or any other court, to which he was neither a party nor privy.

In the absence of any obligation arising upon the *special terms of this contract*, by which the surety is concluded by the judgment against his principal, let us inquire, upon general principles, what effect is to be given to such judgment in an action on the bond against the surety.

The rule is universal, so far as we know, that judgments are only binding as such upon parties and privies.

By *parties*, in the sense here intended, all persons having a right to control the proceedings, to make defence, to adduce and cross-examine witnesses, and to appeal from the decision, where appeal lies, are included.

By the term privies, is meant those who stand in mutual or successive relationship to the same *rights of property*. And privies are distributed into several classes, according to the manner of this relationship. Thus there are privies in estate, as donor and donee, lessor and lessee, and joint-tenants; privies in blood, as heir and ancestor, and coparceners; privies in representation, as executor and testator, administrator and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat. All these are more generally classed into privies in estate, privies in blood, and privies in law.

The ground upon which judgments bind those in privity with the party against whom they are rendered, is that they are identified in *interest*, by their mutual or successive relationship to *the same rights of property involved in the litigation*. See 1 Greenleaf Ev. 8th edit. §§ 189, 523, 536, and cases cited.

It is most indubitable, therefore, that this surety cannot be regarded as either a party, or in privity with any party, to the

judgment against his principal in this bond. He had no right to manage or control, or in any manner interfere with, the suit on which it was founded; nor was he even notified of its existence. He was not therefore a *party*. He had no *relationship* of any character to *the rights of property* here involved. He did not even occupy a relationship as close as that of co-executor or co-administrator, between whom it is held, no privity exists, so as to make admissions by one evidence against the others. He had no power or authority over the estate, and certainly no *interest* in the property. He was not therefore *a privy*. See Duchess of Kingston's Case, 20 State Trials, 538.

The general meaning of privies includes those who claim *under* or in *right* of parties. There is no such privity between a surety and his principal, as will take him out of the general rule. *Bryant et al.* v. *Owen et al.* 1 Kelly (Ga. R.) 370–1.

The reason for this rule, that verdicts and judgments bind *conclusively parties and privies only*, is because privies in blood, in estate, and in law, claim *under* the *party* against whom the judgment is rendered; and they claiming his rights, are of course bound as he is; but as to all others, they are not conclusively binding, because it is unjust to bind one by any proceeding in which he had no opportunity of making a defence, of offering evidence, of cross-examining witnesses, or of appealing, if he was dissatisfied with the judgment; and this is called, in *Burke* v. *Granberry* (Gilmer's R. 25), " a golden rule." *Munford* v. *Overseers of the Poor*, 2 Rand. 318.

Lord Coke said, that to judge a man in a civil or criminal case, without affording him an opportunity of being heard, would be against Magna Charta.

And it has been repeatedly held in this country, under the terms " law of the land," " due course of law," " due process of law," embodied in our respective State and Federal Constitutions, is meant, that every citizen shall hold all his civil and political rights under the protection of a general law, which hears before it condemns; which proceeds upon notice and inquiry, and renders judgment against him, only after a fair and impartial trial. See Smith's Com. on Const. Construction, 722, § 593–4, and authorities cited.

The conclusion is inevitable, therefore, upon well-established

elementary principles, that judgments or decrees against executors, &c., are not *conclusive* evidence against the surety in a suit upon the bond.

An examination of the cases, both English and American, so far as they have come under our observation, sustains this position.

In Virginia, it was so held by Judge Tucker, in *Craddock* v. *Turner's Admr.* 6 Leigh R. 124, in an able review of the cases. Judge Green, in *Munford* v. *The Overseers of the Poor*, 2 Randolph's R. 315, very carefully considers the whole doctrine of the English and American courts, and the reasons upon which it is founded, and arrives at the same conclusion.

In North Carolina, it was held by Judge Taylor, in *McKellar* v. *Bowell et al.* 4 Hawks R. 34, a case argued by Ruffin on one side, and Gaston on the other, that the record of a recovery against a guardian, is not evidence against his sureties in an action on their bond for his default. In the same vol. (4 Hawks, 43), this case is affirmed, and applied to a suit against sureties on an administrator's bond.

And in the same vol. (4 Hawks, 341), the foregoing cases are approved by Judge Hall.

Afterwards, in *Vanhook* v. *Barnett*, 4 Devereux R. 268, Judge Daniel cites and approves these cases, and still adheres to the doctrine, that the judgment against the principal is not even *prima facie evidence* against the sureties.

So in South Carolina, in the case of the *Ordinary* v. *Condy*, 2 Hill's R. 313, Judge Harper reviews the English cases and some of the American cases, and especially the earlier cases in that State, which had been cited as establishing a contrary doctrine; shows that they have been erroneously cited for that purpose, and determines, as the result of his investigation, that a judgment against an administrator is *prima facie* evidence, but not conclusive, against his sureties.

In Georgia, in the case of *Bryant et al.* v. *Owen et al.* 1 Kelly's R. 355, Judge Nisbet holds that a decree against a guardian is only *prima facie* evidence of a devastavit against the surety, not *conclusive.* He says: " The surety now before the court was not a party to this suit in equity : he had no notice, so far as the record discloses, of its pendency : of course, he was not heard in his own defence in

that suit. It is contrary to natural justice, and also to all the analogies of the law, that one should be estopped by a decree to which he was not a party, and of which he had no notice : such a rule would most effectually oust the security of his day in court. His rights would, by such a rule, depend on the diligence or fidelity of others. The principal might collude with the complainant, and permit an iniquitous decree to be rendered against him in order to charge his surety. Human nature is not too good for that, unfortunately ; or his carelessness or neglect might work irreparable injury to the surety."

In Massachusetts, 15 Mass. 47 ; in Pennsylvania, 5 Binney, 184 ; in Kentucky, 5 Monroe, 267 ; in Maryland, 2 Gill & John. 235 ; 3 Harr. & McHenry, 242, we find the same doctrine asserted. Also, in New York, 24 Wend. 52, a very full and able opinion by Judge Cowen.

In our examination, we have found no case of any authority to the contrary.

The case of *Singleton* v. *Garrett*, 23 Miss. R. 195, was a suit against the administrator and surety, and a *joint plea* for *both*.

The cases of *Mann* v. *Yazoo City*, 31 Miss. R. 576, and *The State* v. *Stewart*, 36 Ib. 652, so far as they have any application, are authorities in favor of the surety rather than against him.

We think, therefore, both upon principle and authority, that the true rule is, that in a suit against a surety upon an executor's bond, the judgment or decree of the Probate Court is only *prima facie* *evidence* against the surety, and not conclusive.

It is, indeed, conclusive of the fact of the rendition of such a judgment; but it is only *prima facie* evidence of the *ulterior facts* upon which it is founded.

As to the *ulterior facts* upon which it rests, it is only to be regarded against the surety as the *admission* of the principal during the transaction of the business for which the surety was bound, so as to become a part of the *res gestæ*.

Such admissions, whether *in pais* or *in judicio*, in the course of the administration as part of the *res gestæ*, are evidence against the surety, but not conclusive.

As to the surety, such judgment is to be taken as the *unsolemn* admission of the principal, *extra judicium*, or as his verbal admis-

sion *not acted on*, and which may therefore be controverted by the
.surety, without any breach of 'good faith, or evasion of public jus-
tice. Though admissible in evidence as part of the *res gestæ*, they
are not conclusive against *him*. 1 Greenl. Ev. 8th edit. §§ 187,
207, 209, 211, and cases cited in notes.

Under these views, the demurrer to the second, third, and fourth
pleas should have been overruled.

There was no error in the ruling of the court in relation to the
introduction of the record from the Probate Court. The deposi-
tions, except upon appeal, are not necessarily a part of the record.
See *Henderson* v. *Cargill et al.* 31 Miss. 413, 414.

The transcript of the record from the High Court of Errors and
Appeals was properly excluded, as there was no proof of loss of the
original record in the Probate Court, so as to make it admissible as
secondary evidence.

For the error committed in sustaining the demurrers to the spe-
cial pleas, the judgment will be reversed, cause remanded, and a
*venire de novo* awarded.

HANDY, J., did not sit in this case.