W. S. WILLIAMS ET AL. *v.* STATE, USE MARTHA E. FLIPPIN
ET AL.

1. STATUTE OF LIMITATIONS. *When it begins to run. Administration.*

When the administrator of an unsettled estate dies and his personal representative files an account of the administration, and a decree is rendered thereon showing a balance due the estate, in a suit by distributees of the estate against the sureties on the bond of the administrator, the statute of limitations of six years begins to run at the date of the decree and not upon the death of the administrator.

2. EVIDENCE. *Administrator. Decree on accounting. Admissible against sureties.*

In a suit by distributees against the sureties on the bond of an administrator, a decree in the course of administration, fixing the amount due by him to the estate, is admissible in favor of plaintiffs, and is *prima facie* evidence of the amount so due. This is true although the decree is rendered after the death of the administrator, upon an account of the administration submitted by his personal representative. *Lipscomb* v. *Postell*, 38 Miss. 476.

3. DISTRIBUTIVE SHARE. *Suit on bond of administrator. Liability of sureties.*

Where on the death of an administrator his personal representative settles the accounts of his intestate, the right of distributees to recover their share of the original estate by suit on the bond of the first administrator is not affected by the fact that said personal representative has misapplied the assets of the estate of the first administrator committed to him.

FROM the chancery court of Grenada county.

HON. B. T. KIMBROUGH, Chancellor.

In addition to the facts set forth in the opinion of the court, it is perhaps necessary to state that the decree of September 15, 1883, therein alluded to, provided that $400 of the amount due to the estate of John P. Flippin should be paid over to the administrator *de bonis non* for the benefit of creditors of said estate.

Powell Flippin, who is mentioned in the latter part of the opinion, is the son of Samuel F. Flippin, and being a grandson of

John P. Flippin, deceased, was one of the distributees of his estate. Under the decree of September 15, 1883, his distributive share of the estate was paid. Since he derived his right as distributee through his father, Samuel F. Flippin, who was the administrator and principal in the bond sued on, the defendants, as sureties on the bond, contended that nothing should have been paid to him, the said Powell Flippin, but that the amount should have been paid to the other distributees in discharge of the obligation of Samuel Flippin, the principal in the bond.

This suit was brought on the bond of said Samuel F. Flippin for the benefit of Annie Williams and Martha E. Flippin, distributees, the other distributee, Powell Flippin, not being named as a usee in the suit. The court entered a decree in favor of said two distributees for their shares of the said sum of $1241.59, less the $400 decreed to be paid to creditors as above stated. From this decree the defendants appeal. The opinion contains a further statement of the case.

*R. Horton*, for appellants.

1. The trust relation ceases upon the death of the trustee, and the statute of limitations as against the right of the beneficiary to sue for a breach begins to run at that time. 2 Perry on Trusts, §§ 864, 921; 30 Miss. 320. Therefore the statute commenced to run in this case on the death of the administrator, S. F. Flippin. The law imposes diligence on the distributees. If the statute does not begin to run against them on the death of the administrator, they might, by combining with the personal representative, continue the administration indefinitely, and finally ruin the sureties.

The statute begins to run from the date of the *devastavit*. 3 Williams on Ex. § 2161.

Here the *devastavit* necessarily occurred before the death of the administrator, and under § 1998, code 1880, after his death the administrator *de bonis non* could have sued on his bond, if necessary for the payment of debts. In this case, as the final decree shows, part of the money due by S. F. Flippin was necesssry to pay the debts of the estate. As the administrator *de bonis non* could have

sued, the time which ran against such administrator is to be counted against the distributees. *Weir* v. *Monahan*, 67 Miss. 434.

Creditors may sue on the bond without first having established a *devastavit*. Code 1880, § 2084; 52 Miss. 563.

Since creditors are under no obligation to await the final account, surely the administrator *de bonis non* is not.

The decree of September 15, 1883, did not establish the interests of appellees; it only fixed the liability of the administrator's estate. The right of appellees existed prior to that decree; hence it is not the starting point for the statute of limitations.

The right of the administrator *de bonis non* to sue on the bond of the former administrator was conferred by the code of 1880, and was, doubtless, intended to dispense with the multitude of suits by creditors and distributees, and to save costs.

The rendition of the decree of September 15, 1883, was not a condition precedent to a suit on the bond. Code 1880, § 2084. The fact that part of the money was necessary to pay debts established the right of the administrator *de bonis non* to sue.

2. The money that was paid to Powell Flippin, son of the administrator, should have been paid to discharge the administrator's estate from liability to the appellees as distributees. Powell Flippin was not entitled to anything as distributee until the indebtedness here sued for had been first paid.

3. The decree of September 15, 1883, was not evidence against the sureties. 2 How. (Miss.) 625; 3 Ib. 236; 26 Miss. 539; Murfree's Off. Bonds, § 685; Brandt on Sur. & Guar. §§ 494, 496.

If it had been rendered while S. F. Flippin was living, it would would have been *prima facie* evidence against the sureties, but their obligation is to be strictly construed. They did not make a contract to be bound by anything done by the administrator of their principal after his death. 38 Miss. 476.

That part of the opinion in *Weir* v. *Monahan*, 67 Miss. 434, declaring the decree to be *prima facie* evidence against the sureties, is *obiter dictum*.

*A. H. Whitfield,* on the same side.

1. There is no privity between the sureties and the personal representative of their principal; hence, the decree rendered against such principal is not admissible in evidence against them. *Martin* v. *Ellerbe,* 70 Ala. 334; 16 Ib. 100; 26 Ib. 682; 10 Wall. 583; Murfree's Off. Bonds. § 685.

The sureties did not promise to answer for the fidelity of the personal representative of their principal, and a judgment or decree against him is not evidence against them for *any* purpose.

It does not follow from this that there is to be a failure of justice. The remedy is by an original bill in equity or its equivalent, as shown in the able opinion of the supreme court of Alabama in *Martin* v. *Ellerbe, supra.*

The question at issue has never been decided in this state. In *Lipscomb* v. *Postell,* 38 Miss. 476, judgment was rendered against the executor, who was the principal *while living.*

The casual remark at the close of the opinion in *Weir* v. *Monahan,* 67 Miss. 434, is no authority, for the point at issue here was not presented or argued, and the decision went off on other grounds.

2. There is another reason why the decree was not admissible against the sureties. The bond is mere inducement to the action; the *gravamen* of the matter is the alleged *devastavit.* 1 How. 375. In order to establish a *devastavit* three things were formerly necessary: (1) A suit against the administrator with a judgment *de bonis in testatoris.* (2) An action of debt on this judgment suggesting a *devastavit,* and a judgment *de bonis propriis.* (3) An action on the bond founded on this judgment. See 51 Am. Dec. 530; Brandt on Sur. & Guar. § 494.

The second judgment above named may now be omitted. 52 Miss. 561; Code 1880, § 2084.

It is a fixed rule in this state that, except where the administrator-in-chief dies leaving no personal representative, there must always be a judgment or decree against the administrator while living, fixing his liability, before there can be a suit against the sureties on the bond. 52 Miss. 561; 3 How. 236. See, also, 51 Am.

Dec. 529, and notes; 83 Ib. 384; 73 Ib. 647; Murfree's Off. Bonds, §§ 599, 601.

"Where an executor dies and has no personal representative, a legatee may, without a previous suit against him convicting him of a *devastavit*, maintain a bill in equity against his sureties, convening all the parties interested to establish a misappropriation of the estate." 51 Am. Dec. 532, and note.

When there is a personal representative, there must be shown then to have been rendered against the administrator-in-chief, *while living*, a preliminary judgment establishing the *devastavit*, or, if that has not been done, then all the parties must be "convened by a plenary original bill in equity."

No decree obtained as this was against the personal representative of the administrator, to which these sureties were not parties, can by any possibility be received against them as any evidence whatever. The decisions in 23 Miss. 284, and *Hunt* v. *Potter*, 58 Ib. 96, do not contravene this, because this action is based on an alleged *tort*, the *devastavit*, and not on contract. 12 Wheaton, 515; 51 Am. Dec. 515.

For these reasons the decree of September 15, 1883, was not admissible in evidence at all.

3. There is another view equally fatal to appellees. The nature of the debt sued for being a *devastavit*, this action is not simply on the bond, but for the *devastavit*. The suit is not really by appellees to recover a distributive share, but against the sureties to recover for a *devastavit*. A party injured by a *devastavit* is but a simple contract creditor. The debt is considered as due from the time of the *devastavit* and not from the date of the decree. 3 Williams on Ex. § 2161.

The claim here sued for is clearly barred by the statute, for if there was a *devastavit* committed it must have been by the administrator while living, and he died more than ten years before the institution of this suit. On this point see Murfree's Off. Bonds, § 784.

We ask a reversal, and a final decree here in favor of appellants.

*William C. McLean,* for appellees.

1. It is settled in this state that before distributees can sue upon the bond of the administrator there must be a final account, and the amount due must be fixed by the chancery court; hence, the statute of limitations begins to run not from the date of the *devastavit,* but from the decree fixing the amount due by the administrator.　23 Miss. 362; 25 Ib. 134, 532; *Dobbins* v. *Halfacre,* 52 Ib. 561.

At the time of the rendition of the decree there were debts due by the estate.　*Weir* v. *Monahan,* 67 Miss. 434.

Section 1998, code of 1880, authorizing an administrator *de bonis non* to sue upon the bond of a former administrator, does not affect the question.　The condition precedent to the right to sue upon the bond is the rendition of the decree upon final account.

This is a direct technical trust, and the statute of limitations does not begin to run until the decree is rendered upon the final account. *Nunnery* v. *Day,* 64 Miss. 457; 30 Ib. 32; 34 Ib. 322; Perry on Trusts, 863.

2. The decree was *prima facie* evidence against the sureties. *Weir* v. *Monahan, supra.*　See opinion on p. 455.

The Alabama doctrine is not in accordance with the repeated utterances of this court.　See *Lipscomb* v. *Postell,* 38 Miss. 476, reaffirmed in *State* v. *Hull,* 53 Ib. 626.

There is no privity between the administrator and the heir, yet it is settled that a judgment against the administrator is admissible against the heir, and is *prima facie* evidence.　*Yandell* v. *Pugh,* 53 Miss. 295.

Williams, the representative of the administrator, was by the suit charged with the duty of settling his accounts.　Code 1880, § 1997.　In executing the bond the sureties contracted with reference to the law which required the accounts to be filed by the personal representative in the event of the death of the principal.

3. The sureties have no right to demand that appellees should look to the estate of the administrator for any part of the amount due by the decree.　It was as much the duty of the sureties to see that his estate should be properly applied as it was the duty

of appellees. The distributees were not compelled to pursue S. F. Flippin's estate to insolvency, but, upon rendition of the decree, they had a right to sue either or all of the sureties, without even joining the representative of Flippin's estate. *Lewis* v. *State*, 65 Miss. 468. See opinion on p. 474.

The appellees are not responsible for the payment to Powell Flippin. They were not concerned with any misapplication of the estate of S. F. Flippin.

COOPER, J., delivered the opinion of the court.

John P. Flippin died in December, 1877, and in January, 1878, administration upon his estate was granted to Samuel F. Flippin, who qualified and gave bond with the appellants as his sureties. In November, 1878, Samuel F. Flippin died intestate, and administration upon his estate was granted to one Williams, who, as such administrator, filed the final account of his intestate as administrator of the estate of John P. Flippin. This final account as passed showed a balance of $1241.59 due by the deceased administrator to the estate of his intestate, and on the 15th of September, 1883, a decree was rendered thereon against the administrator of the deceased administrator for that sum. Administration *de bonis non* of the estate of John P. Flippin was granted to Mrs. Mary E. Flippin, and, the estate having been finally settled, the present suit is brought by the distributees of John P. Flippin against the sureties upon the bond of Samuel F. Flippin to recover the amount of the said decree, less the sum of $562.74 paid by the administrator of Samuel F. upon the same, the estate of Samuel F. having been fully administered as an insolvent estate. This suit was brought on the 11th of September, 1888, more than six years after the death of Samuel F. Flippin, but less than six years from the date of the decree above referred to. The defendants pleaded the statute of limitations of six years after the death of the administrator and before suit brought, in bar thereof, and the action of the court below in disallowing this plea presents the first ground of the errors assigned.

It is urged by the appellants that the death of the administrator terminated the trust for the faithful administration of which they

had become bound, and that, since any *devastavit* by their principal must have preceded this event, the statute of limitations then began to run, and by the lapse of the statutory period between the death of the administrator and the institution of this suit they are discharged of all liability as sureties on his bond.

To this contention on the part of the sureties it is sufficient to reply that, though the administrator may die, the administration committed to his hands continues in the court until closed by his personal representative in the manner directed by law.   The death of the administrator is not a *devastavit* of the estate, and confers no right of action either upon the administrator *de bonis non* of the original intestate or upon his distributees.   It is the decree of the court having administration of the estate rendered upon the final account of the original administrator made by his administrator, which fixes the liability of the deceased administrator, and from its date the statute of limitations begins to run.   *Nunnery* v. *Day,* 64 Miss. 457 ; *Cooper* v. *Cooper,* 61 Ib. 676.

The defendants objected to the introduction in evidence against them of the decree of September 15, 1883, rendered upon the final account of Samuel F. Flippin as administrator, by his administrator Williams, on the ground that it was *res inter alios acta,* and therefore incompetent.   It is conceded by counsel that since the decision of *Lipscomb* v. *Postell,* 38 Miss. 476, it has uniformly been held in this state that an account of the administrator in the course of administration, or a judgment or decree against him, is admissible in evidence against the sureties, and makes a *prima facie* case to be rebutted by them.   The contention is that a different rule should apply to an account rendered by the personal representative of the deceased administrator, for whom and for whose acts the sureties have not bound themselves.   Counsel rely principally upon the decisions of the supreme court of Alabama, notably that of *Martin* v. *Ellerbe,* 70 Ala. 334.   In that state it seems to be settled, that a decree in the administration of an estate rendered upon the final account of an administrator by his administrator, cannot be given in evidence in a suit against the sureties on the administrator's bond, but that a decree made upon the account of the principal ad-

ministrator is conclusive against his sureties. We cannot concur in the correctness of the views entertained by the Alabama court. We can perceive no well-founded distinction between one decree and the other when both are made by the court having jurisdiction of the administration, and in the course thereof.

The condition of the bond of the administrator is, that he shall " perform the duties required of him by law," which duties consist in the due administration of the estate, by the payment of debts and the distribution of the remainder among those entitled to receive it. There is much confusion and diversity, both of argument and decision, upon the question of the competency and effect in evidence of a judgment or decree against the principal, when offered against the sureties upon his administration bond. In Alabama such judgment or decree is conclusive; but a decree upon an account rendered by the administrator of the administrator is not evidence at all. In North Carolina a judgment against the administrator is not evidence at all against the sureties. *McKellar* v. *Borrell*, 4 Hawks, 34. In Virginia, South Carolina, Georgia, New York, and Mississippi, the argument is against the competency of the evidence, but the decisions are that it is competent but not conclusive evidence. *Mumford* v. *Overseers*, 2 Rand. 315 ; *Craddock* v. *Turner*, 6 Leigh, 116 ; *Lyles* v. *Caldwell*, 3 McCord, 225 ; *Ordinary* v. *Condy*, 2 Hill. (S. C.) 313 : *Bryant* v. *Owen*, 1 Kelly, 355 ; *Douglass* v. *Howland*, 24 Wend. 35 ; *Lipscomb* v. *Postell*, 38 Miss. 476. As we have observed, we are unable to adopt the distinction of the supreme court of Alabama, by which a difference is made between the decree against the administrator on an account rendered by him and a decree rendered against the estate of such administrator upon his final account rendered by his administrator. Each is a decree in the administration of the estate ; each is conclusive against the principal in the bond or his personal representative, and each is upon an account filed in the administration of the estate by the first administrator, one being rendered by him in person and the other by his personal representative *for him*.

It is to be remembered that the statute provides for both accounts as a part of the *lawful* administration of the estate, and it is for that

that the sureties have bound themselves. Their obligation is that the administrator shall account for and pay over the estate committed to his charge. "The decree is evidence that he has been called upon and has not performed this obligation, and thus proves the breach assigned." *Lyles* v. *Caldwell*, 3 McCord, 225.

The appellees are not chargeable with any misapplication by the administrator of the estate of Samuel Flippin of the assets of his estate; they had no control over the same, and could not have prevented the payment to Powell Flippin, who, it is conceded, was not entitled to receive anything until the debts of Samuel should have been finally paid. But this was a mere wasting of the estate of Samuel Flippin, and for that his administrator, and not appellees, must respond.

*The decree is affirmed.*