373 So.2d 790 (1979)
Neal CLEMENT and Howard E. Stover et al.
v.
R.L. BURNS CORPORATION and F. William Foran et al.
No. 50901.
Supreme Court of Mississippi.
July 25, 1979.
*791 Gerald, Brand, Watters, Cox & Hemleben, Martha W. Gerald, Jack W. Brand, Scott P. Hemleben, Jackson, Coleman & Coleman, West Point, Craig Castle, Jackson, for appellants.
Brunini, Everett, Beanland & Wheeless, Frank E. Everett, Jr., Vicksburg, Tubb, Stevens & Morrison, Murray Tubb, West Point, for appellees.
Before ROBERTSON, P.J., and LEE and COFER, JJ.
COFER, Justice, for the Court:
This is an appeal from the Chancery Court of Clay County in a cause wherein the appellants, Clement, Stover, et al., claiming ownership of, or a leasehold interest in, the oil, gas and other minerals on and under an area of land description of which is not in issue herein, brought suit entitled "Bill in the Nature of a Bill of Review and for Cancellation of Clouds." The defendants thereto, appellees herein, Roy N. Martin, et al., claiming the land and the oil, gas and minerals thereof, or a leasehold interest in the said oil, gas, and minerals, answered and, by cross bills, prayed that title to the land, surface, and oil, gas, and minerals thereof, be confirmed in certain of them, and that oil lease and other interests resulting from the oil lease be confirmed in others of cross complainants, and that all claims of complainants-appellants here be cancelled as clouds on their respective titles and interests.
After extensive hearing, the chancellor denied the complainants' prayers for relief, and largely granted the prayers of cross complainants. Concluding that the decree of the chancellor is amply supported by the evidence, we affirm the cause.
Appellants have assigned as errors the following:
(1) The chancellor's holding that the decree in an earlier confirmation cause was valid and res judicata of the issues here, and that limitations and laches bar the present suit.
(2) The chancellor's holding that a tax sale (September 20, 1954), and tax deed issued thereon (February 2, 1957), were valid and effective to convey the secured mineral interest owned by the heirs of one Colonel (name and not title) Henry Hill in the lands.
(3) The chancellor's finding that the confirmation decree aforesaid was notice to the world of the claim of the tax sale purchaser, (Mrs. Roy N. Martin, predecessor in title *792 of several of the defendants, her heirs, and through whom all defendants claim), of the mineral interest under the lands and that the claim was open, hostile, notorious, and possessed other attributes of adverse ownership.
(4) The chancellor's granting of cross-complainants' prayers with reference to removal of clouds and confirmation of title, and the chancellor's failure to grant the relief sought by complainants' amended bill of complaint.
On April 18, 1921, Colonel Henry Hill and his wife conveyed the lands to one T.B. Woolbright reserving "any oil, gas, or any minerals" in the land.
The said Hill had been married before, that wife becoming deceased in October 1913, and having first given birth to some ten children, many of whom had died before the hearing. He was married to his second wife in June, 1914. Five children were born unto this marriage, three of whom were deceased at the hearing. This wife died in October, 1966.
At some time before the conveyance mentioned above, Hill had lived in Kentucky, and had come to Mississippi, living first at Aberdeen, then moving to West Point, where the land conveyance took place. He lived there less than one year, then moved to Port Gibson. He left there and lived for a time at Salem, Virginia, and then returned to Port Gibson for three or four years, making his final departure from Mississippi in May, 1927.
He died in Virginia on December 19, 1934. Until events in the middle 1970's began happening, neither Colonel Hill nor any of his host of heirs and descendants had evidenced any interest in the minerals reservation, so far as shown by the record.
Through mesne conveyances, the land was acquired by Joseph L. Seitz, one of three brothers engaged in farming, saw-milling, and other businesses in and about West Point. Various lands were acquired in the name of one or another of these brothers, but treated as property of the Seitz partnership. In the early 1950's, another member was being taken into the partnership, and, preparatory thereto, the brothers made what appears to have been to them a satisfactory division of the real estate. The land here was assessed for taxes in the name of Joseph L. Seitz.
In the year 1953, this land was thus assessed, but the lady, wife of one of the Seitz brothers, who, for several years, attended to the payment of taxes for the brothers, was told by one of the brothers who could not be identified, to cause the land here not to be included in the payment, and that land was stricken from the Joseph L. Seitz receipt, and went unpaid.
On April 30, 1954, Joseph L. Seitz conveyed the land to J. Edward Seitz.
The Sheriff and Tax Collector of Clay County sold this land for the delinquent 1953 taxes on September 20, 1954, and, on instructions from someone purporting to speak for her, struck the land off to Mrs. Roy N. Martin, one and the same person as Mrs. Harriet Seitz Martin, J. Edward Seitz' daughter.
On February 2, 1957, the Chancery Clerk of Clay County executed to Mrs. Martin a tax deed on the land, reciting that the land had not been redeemed.
A suit was begun to confirm title in Mrs. Martin (hereinbefore set out as the person through whom all appellees ultimately claim) with Mrs. Martin's father J. Edward Seitz, her uncle Joseph L. Seitz, Colonel Hill and his wife, and others as defendants. A decree was entered in that cause consistent with the prayer of the bill of complaint, the decree being dated May 13, 1958.
After the September 20, 1954, tax sale, the land was assessed to J. Edward Seitz, and the record sufficiently supports the conclusion that the taxes thereon were paid in some manner in his name and also that *793 Mrs. Martin repaid the tax money as the taxes accrued and were paid, although documentary evidence was only brought forward that she paid the taxes for 1968 and 1969. The assessment was changed into her name in 1969.
On May 15, 1973, Mrs. Martin executed to F. William Foran an oil and gas lease on the land, which was assigned to R.L. Burns Corporation. After this assignment, various transfers and assignments were placed of record, and R.L. Burns Corporation (Burns) placed on the oil and gas of this and hundreds of other acres of land a large mortgage. It is undisputed that Burns spent millions of dollars in its development of the block of land, which included the drilling of a well on this land resulting in the production of natural gas and condensate.
There were those who gained information that Colonel Henry Hill had made the "oil,' gas, or any minerals" reservation in the April 18, 1921, deed hereinabove noticed, and there was a monumental undertaking to locate those claiming under or through him, which resulted in phenomenal success, oil and gas leases being procured from Colonel Hill's heirs in favor of J.C. Searcy, Jr. and John L. Burwell, Jr., who, with those heirs, brought this suit. The record reflects that these heirs began to be made aware of what they called attempted fraud on them on or about December 10, 1974, when they were contacted by an individual who had discovered the facts, and they assert that, on finding this information, they proceeded to prepare this suit. (The suit was begun February 23, 1976).
In their suit, they attack the tax sale and purchase by Mrs. Martin as being the product of fraud on her part and of her father, J. Edward Seitz, and her uncle, Joseph L. Seitz; they also assert timely redemption of the land by Joseph L. Seitz, and charge that the confirmation suit, which they attack as void on several grounds, was a part of their fraudulent scheme to deprive complainants-appellants of their minerals ownership. They claim constructive possession of the minerals from April 18, 1921, to Burns' activity beginning in 1974.
They prayed that the decree in the confirmation case be set aside, "by reason of collusion, extrinsic fraud, and lack of jurisdiction" (because of insufficiency of process); that there be cancelled as clouds on their title to the oil, gas and minerals, the tax deed to Mrs. Martin, her oil lease to Foran dated May 15, 1973; various assignments growing out of, and made under, that oil lease, and the deed of trust by Burns to Continental Illinois Bank and Trust Company.
Defendants' cross bills were for the cancellation of oil leases and other claims beginning with Colonel Hill's heirs that amount to clouds on cross complainants' titles or rights to or in the oil, gas, and minerals.
Complainants-appellants claim that the tax sale and the transaction thereafter were fraudulent and part of a fraudulent scheme to procure into the Seitz family, or more particularly into J. Edward Seitz and Mrs. Martin, his daughter, the oil, gas, and minerals reserved by Colonel Hill in 1921 and evidently long since forgotten by him and his heirs.
Appellants claim privity of estate existed between them and the owners of the surface of the land, and apparently contend that the surface owner was under a fiduciary duty to protect their rights. Black's Law Dictionary, Third Edition (1933), defines "privity of estate" as:
Privity of estate is that which exists between lessor and lessee, tenant for life and remainderman or reversioner, etc., and their respective assignees, and between joint tenants and coparceners... .
In Lipscomb v. Postell, 38 Miss. 476 (1860), it is said:

*794 By the term privies, is meant those who stand in mutual or successive relationship to the same rights of property. And privies are distributed into several classes, according to the manner of this relationship. Thus, there are privies in estate as donor and donee, lessor and lessee, and joint-tenants; privies in blood, as heir and ancestor, and coparceners; privies in representation, as executor and testator, administrator and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat... . (Emphasis in original).
(38 Miss. at 489).
Privity implies succession. He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it charged with the burden attending it. (Boughton v. Harder, 46 App.Div. 352, 61 N.Y.S. 574, 576).
See Stone v. Grenada Grocery Co., 180 Miss. 566, 570, 178 So. 107 (1937).
The minerals here being subject to tax and susceptible of assessment separate from the remaining property in the land [Mississippi Code Annotated, section 27-35-51 (1972)], it was the duty of the minerals' owner to give them in for assessment purposes (section 27-35-23).
In Stern v. Parker, 200 Miss. 27, 25 So.2d 787, 27 So.2d 402 (1946), cited with approval in Bailey v. Federal Land Bank of New Orleans, 206 Miss. 354, 376, 40 So.2d 173 (1949), it was held to be the duty of the owner of the separate mineral interest to see that his interest is properly assessed for ad valorem taxation and if he is derelict in doing so, and permits the land to sell to a third person for taxes upon an assessment of the whole property to the surface owner without any exception of his interest and permits a tax title to mature in the purchaser, he may not thereafter have his interest back-assessed and thereby avoid the consequences of the tax sale.
The owners of the oil, gas, and minerals in this land never, during the existence of that separate estate, when permissible, caused them to be separately taxed, backtaxed, nor took advantage of the mineral documentary stamp authority in Section 27-31-71, et seq.
The September 20, 1954, sale of the property for 1953 taxes as effectually conveyed the oil, gas, and minerals as the surface of the land.
Appellants charge the existence of a fiduciary relation between Mrs. Martin and her father J. Edward Seitz, which rendered Mrs. Martin's act in buying her father's property at the tax sale only for the payment of the taxes thereon, and not a purchase thereof by her. In support of this proposition, appellants had evidence that she and her father were close, and that her husband was not included in all conversations and meetings between them.
The burden of proving confidential or fiduciary relations is upon the person who claims their existence, and there is no presumption that such arises because of blood relationship accompanied by affection between the parties. Cresswell v. Cresswell, 164 Miss. 871, 887, 144 So. 41, 43 (1932); Glover v. Glover, 367 So.2d 167 (Miss. 1979). In this appellants failed.
It is urged that Mrs. Martin colluded with her father and uncle to accomplish destruction of the separate ownership of the oil, gas, and minerals. We have hereinabove noted the testimony that the land was assessed to Joseph L. Seitz, and someone, apparently one of the three partners, instructed the wife of one of the partners not to pay the 1953 taxes on this land, and she followed those instructions. On September 20, 1954, the sheriff offered the land at public sale for the taxes and it was bought in. On someone's instructions, the sheriff declared Mrs. Roy N. Martin the successful bidder and she was so shown on the tax sale records. Much is said of her not being *795 present at the sale and of someone else bidding and then instructing the sheriff to strike the land off to her. We do not understand that, in order to bid or to buy the property in, she had to be personally there, finding rather that she accomplished this result through the agency or accommodations of another. There is proof of the presence of Joseph L. Seitz at the sale and of T.J. Tubb, an attorney living at West Point, but widely prominent in the State of Mississippi; that Tubb represented the Seitz interests, and not Mrs. Martin, and that Tubb, spokesman for the Seitz brothers, told the sheriff to declare Mrs. Martin the successful bidder. In the whole record, though, this is left to conjecture.
It is elementary law that so serious a charge as fraud has to be clearly alleged, and, on hearing, there is a presumption against fraud, and the facts and circumstances relied upon and alleged must be proved by clear and convincing evidence. McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494 (1963); Hamilton v. McGill, 352 So.2d 825 (Miss. 1977); Crawford v. Smith Bros. Lumber Co., Inc., 274 So.2d 675 (Miss. 1973).
The complainants have failed in their allegations and proof of fraud or conspiracy.
Some of the pertinent public records have disappeared in the passing of more than a score of years since the sale and the activity in the chancery clerk's office having to do with it. There is, however, and in the record as Exhibit 42, tax sale record book 7, page 53, on which, in a long line (No. 19) from left to right appear certain entries which would cause an inference that amounts necessary to redeem had been calculated. However, at the crucial spot in this line of entries where "Date Redeemed" was to appear, there is no date shown; but is blank. In the blanks on the right of this blank redemption date, there appears the following:

 Date of
Grand Total Notice Address Bk. and page mailing by
Necessary to Date of of where liens registered
Redeem Redeemed Lienors Lienors are created mail
----------------------------------------------------------------------------
17 This property matured in purchaser & Tax Sale Deed issued to
18 Mrs. Roy Martin Feb. 2, 1957.
19-3090 Geo. L. Howard
 Date execution Purchaser's receipt
Grand Total returned for amount paid
Necessary to _ _ _ _ _ _ _ By whom Check
Redeem Mo. Day Year redeemed No.
----------------------------------------------------------------------------
17 Mrs. Roy Martin
18 Paid Joe L. Seitz 28.90 Joe L. Seitz
19-3090

*796 Chancery Clerk Howard did not occupy that office when the sale was made, but entered the office at the beginning of 1956. He could not remember details, but recognized the notation of the maturing of the purchase and the issuing of the deed to Mrs. Martin as being in his handwriting. There was introduced in evidence a check drawn on him as chancery clerk, payable to "Geo. L. Howard, Land Redemptions" in the amount of $30.90, dated April 18, 1957, and marked "for transfer."
A picture copy of another check dated April 18, 1957, was introduced. It is in the amount of $28.90 payable to Mrs. Roy N. Martin, marked "for land redeemed  Joe L. Seitz," and drawn on "Geo. L. Howard  Land Redemption Account." It was endorsed by Mrs. Martin and negotiated.
It is contended that these documents are proof positive that there was a redemption of the property from the sale. There is no date showing the time thereof, and it is argued that the time may be determined by reference to the damage computation of one percent per month, which, if actually redeemed according to that figure, would place the date within the two-year period allowed for redemption. No one, Mr. Howard included, had any pertinent recollection. If these checks actually establish that a redemption took place, then their April 18, 1957, date would be substantially after the tax deed was issued on February 2, 1957, wherein it is recited that there had been no redemption from the sale.
It was recognized in the proof that redemption may not legally take place after two years from the date of sale.
Appellants put their position this way: The clerk could not accept redemption money after two years from the date of sale, but he did accept the redemption money; therefore, it must have taken place within the redemption time. We put the converse situation syllogistically: The clerk could not issue the tax deed if redemption from the sale was timely made; he did issue the tax deed; therefore, there must not have been any timely redemption. This syllogism fits the present facts.
Appellants put themselves in an untenable position in advancing the theory that the whole sale, including the confirmation proceeding, was a fraud, a sham, and a scheme to put the land and the oil, gas, and minerals together in a third party, and, at the same time, arguing that one of the fraud participants redeemed the land from the sale, and, therefore, the tax deed is invalid. In addition, the asserted fraud perpetrator, Joseph L. Seitz, being a party to the confirmation suit, did nothing to resist the confirmation sought.
(It is to be borne in mind that, regardless of the validity of Mrs. Martin's title, Joseph L. Seitz had divested himself of any title to the land, and was a stranger to the title. Section 27-45-3).
Section 27-45-1, clearly required, in case of redemption, that:
... The clerk shall make his redemption settlements within twenty days after the end of each month and shall make a complete report thereof to the board of supervisors, a true copy of which he shall file with the state auditor ... The clerk shall also note each redemption on the public record of delinquent tax lands on the day payment of taxes is made, with the date, name and amount of redemption money paid.
That section and section 27-45-5 make provisions of disbursement of monies paid in redemption and report thereof, and appellants have come forward with little and speculative information that would exist on the completion of the redemption disbursement, settlement, and report required by these statutes. The tax sale record extract, appearing as exhibit 42 in the evidence has only a blank where the date of the redemption, if any, was to be shown.
We think that the elusive and scant proof touching upon the payment to Mrs. Martin of the check on April 18, 1957, more than two and a half months after her tax deed had been delivered and recorded, does not defeat or avoid her deed and title in her thereby, and estoppel on her part to deny the asserted redemption has not been established.
*797 In the sale for taxes all separate ownerships and estates in the land were merged into one, and they became the property of Mrs. Martin. The record is sufficient that with the tax sale and the tax deed following the sale, all of record, Mrs. Martin had color of title and that she entered the land personally and by authorized representation, and occupied the same in all things in the manner described in Section 15-1-7, far, far longer than ten years, and, if she had not obtained a good title, as we hold she did, in the tax sale and deed to her, title to the land, including the oil, gas, and minerals had vested in her long before the Foran lease and her decease.
It is further true that, by the time appellants filed their suit, Colonel Henry Hill and his wife were deceased, as were Joseph L. Seitz, Edward Seitz, and Mrs. Roy N. Martin, the alleged fraud conspirators; records had disappeared, or had been destroyed as provided by law; memories had been befogged by the passage of time and other more pressing concerns; development was advancing at costs of millions of dollars and numerous changes in relevant rights had taken place. Delay is not laches unless it results in hardship to another; but appellants here are guilty of laches. Cannada v. Marlar, 185 So.2d 649, 651 (Miss. 1966). This damaging delay might in itself suffice to bar the relief appellants seek, but before reaching laches we have held they are not entitled to any relief.
Finding that the chancellor's degree should be affirmed, we do not reach other considerations presented in the assignments of error remaining, none of which would affect our conclusions.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE and BOWLING, JJ., concur.
SUGG, J., took no part.