WILLIS A. JOY, AS ADMINISTRATOR, *vs.* JAMES ELTON, *et al.*

Opinion filed October 16, 1900.

### Executor's Bond—Final Accounting of Executor—Judgment.

This action is brought upon an executor's bond filed by the defendant Stillman W. McLaughlin in the County Court of Grand Forks county in connection with ancillary letters testamentary issued by said court to said McLaughlin; McLaughlin having previously received original letters testamentary in a foreign state, in which the deceased was domiciled at death. The suit is brought to recover a balance claimed to be due the estate from said McLaughlin as executor. The only evidence of any such balance was a certain judgment entered by the County Court of Grand Forks county upon an accounting made in said court by the executor. *Held,* that a judgment entered by the County Courts of this state upon the final accounting of an executor is of equal rank with judgments entered in other courts of record in this state, and is conclusive as against collateral attack, except upon jurisdictional grounds and those of collusion and fraud.

### Judgment Against Executor—Collateral Attack.

Such judgment is conclusive as against the bondsmen as well as the executor, and, as against the bondsmen, imports verity, and is not merely prima facie evidence of its contents. Such judgment is not a judgment against mere indemnitors, within the meaning of chapter 69 of the Civil Code; and hence the fact that the bondsmen were not present, and were not made parties to the accounting, does not invalidate the judgment as against the bondsmen. *Held,* upon the facts set out in the opinion, that the judgment sued on in this case is conclusive against the executor and his bondsmen, and that the same is not vulnerable to collateral attack upon jurisdictional grounds. *Held,* further, that the trial court erred in directing a verdict for the defendants; also,

### Executor and Trustee Under Law.

*Held,* that where the same person is named in a will both as executor and as trustee, and is by the terms of the will required to execute certain trusts created by the will, the two capacities—those of executor and trustee—are distinct and independent of each other.

### Liability of Executor—Accounting—Discharge.

*Held,* further, that such an executor, after taking possession of assets belonging to the estate as executor, cannot relieve himself and his bondsmen, with respect to such assets, by his own mere mental operations, and thereby cross the line dividing the two capacities. To be discharged from his liability as an executor, he must take some affirmative action of a character which is open and notorious, such as would be an accounting in the court from which he received his letters as executor, and a discharge as executor.

Appeal from District Court, Grand Forks County; *Fisk,* J.

Action by Willis A. Joy as administrator of the estate of Catherine L. Wording, deceased, against James Elton and Stillman W. McLaughlin as executors of the estate of Catherine L. Wording, and others. From a judgment in favor of defendants, plaintiff appeals.

Reversed.

*Bosard & Bosard,* for appellant.

If the same person is named as executor and also as trustee under a will, he may accept the one and decline the other. If he qualifies as executor and declines as trustee he will be chargeable as executor until the property is properly turned over to a qualified trustee. Gary's Probate Law, 741. An executor cannot convert himself into a trustee by a mere mental operation without an overt act. Herrick & Doxsee on Probate Law, 73; *Hall* v. *Cushing,* 9 Pick. 395; *Prior* v. *Talbot,* 10 Cush. 1; *Conkey* v. *Dickinson,* 13 Metc. 54; *Newcomb* v. *Williams,* 9 Metc. 525; *Dorr* v. *Wainwright,* 13 Pick. 328; *Towne* v. *Amidon,* 20 Pick. 535; *Miller* v. *Congden,* 14 Gray, 114; *White* v. *Ditson,* 140 Mass. 351, 4 N. E. Rep. 606, 54 Am. Rep. 473. Where the law gave to him two characters, those of executor and trustee, and the duties of the latter character were entirely distinct from, and independent of those of the former; where the same person is executor and trustee he must give a bond in his character as trustee before he can exonerate himself from his liability as executor. *Dagget* v. *White,* 128 Mass. 398; *Groton* v. *Ruggles,* 17 Me. 137; *Williams* v. *Cushing,* 34 Me. 370. Where one person is appointed by law as executor and trustee and fails to give bonds and to qualify as trustee, and a trustee is subsequently appointed he can recover the property in a suit on the executor's bond. *Briggs Exr.* v. *Baptist Church,* 8 Atl. Rep. 257; *In re Higgins Estate,* 28 L. R. A. 116, 39 Pac. Rep. 507; *Ryan* v. *Kinney,* 2 Mont. 454; *Bellinger* v. *Thompson,* 37 Pac. Rep. 744; *Wilson* v. *Wilson,* 17 Ohio St. 150, 91 Am. Dec. 125. Executors cannot discharge themselves of their official responsibility without doing some act to change the character of their holding and place the fund safely where it ought to be. *Cranson* v. *Wilsey,* 39 N. W. Rep. 9; *Newport* v. *Hazard,* 13 R. I. 1; *Scituate* v. *Angel,* 14 R. I. 495; *State* v. *Branch,* 134 Mo. 592; 56 Am. State Rep. 533. The sureties recognized the jurisdiction of the County Court in giving the bond so that McLaughlin could get letters testamentary, and they cannot question the jurisdiction of the court in this action, but are liable for his default. §§ 6185, 6186, Rev. Codes; *Green* v. *Wardwell,* 17 Ill. 278; *Peo.* v. *Norton,* 9 N. Y. 176; *Kelly* v. *State,* 25 Ohio St. 567; *Custer* v. *Albien,* 64 N. W. Rep. 533; *Lees* v. *Wetmore,* 12 N. W. Rep. 241; *Murphy* v. *Creighton,* 45 Ia. 175; *Shoenberger's Estate,* 20 Atl. Rep. 1050; *Fisher* v. *Bassett,* 3 Am. Dec. 228; *Deegan* v. *Deegan,* 22 Nev. 185, 50 Am. State Rep. 742, Black on Judg. 271, Van Fleet on Coll. Att. § 841. The defendants cannot raise the objection that the court did not have jurisdiction to make the order. It is conclusive against the executor himself and the sureties on his bond. *Bodrip* v. *Bodrip,* 56 Cal. 563; *Holland* v. *State,* 48 Ind. 391; *Gorton* v. *Botts,* 73 Mo. 276; *State* v. *Slauter,* 80 Ind. 597; *Wolfe* v. *Shaffer,* 74 Mo. 154; *Slagle* v. *Entrekin,* 44 Ohio St. 637; *Braden* v. *Mercer,* 44 Ohio St. 338; *Moulding* v. *Wilharte,* 46 N. E. Rep. 189; *Meyer* v. *Barth,* 72 N. W. Rep. 748.

*Corbet & Murphy, Templeton & Rex,* for respondents.

The jurisdiction had and exercised by the County Court of Ra-

cine, Wisconsin, was exclusive so far as relates to the matters attempted to be passed on by the County Court of Grand Forks county by the order here attacked. The property constituting this estate consisted of notes and cash, it could have not situs independent of the domicile of the owner. *Cleveland, Etc., Ry. Co.* v. *Pennsylvania,* 15 Wall. 300, 21 L. Ed. 179; *Cooper* v. *Beares,* 143 Ill. 25; *Parsons* v. *Lyman,* 20 N. Y. 103; *In re Butler,* 38 N. Y. 397; *Putnam* v. *Pitney,* 45 Minn. 242; *Broughton* v. *Bradley,* 73 Am. Dec. 480; *Cutts* v. *Hoskins,* 9 Mass. 543; *Christy* v. *Vest,* 36 Ia. 285. As executor of this will McLaughlin became at once invested with the title to all the personal property belonging to Wording at the time of her death. *In re Butler,* 38 N. Y. 397. The Wisconsin court by admitting this will to probate did the only thing necessary to vest and confirm in McLaughlin title to and power of disposition over this property. *In re Butler,* 38 N. Y. 397. The Wisconsin court has acquired jurisdicion, and that jurisdiction is exclusive and extends to the matter of accounting for personal property assets. *Parsons* v. *Lyman,* 20 N. Y. 103, Story's Conflict of Laws (8 Ed.) § 518; *Fletcher* v. *Sanders,* 32 Am. Dec. 96. The executor must account, at the domicile, for assets actually received by him in a foreign jurisdiction. *In re Ortiz,* 86 Cal. 306, 21 Am. St. Rep. 44; *Fox* v. *Tay,* 24 Pac. Rep. 855. An ancillary administrator can have no control over assets which are not subject to the law, under which he was appointed, and his surety will be liable only for his faithful administration of such assets as he had a right to receive. *Fletcher* v. *Sanders,* 32 Am. Dec. 96, *Baldwin's Appeal,* 81 Pa. St. 441; *McCord* v. *Thompson,* 92 Ind. 565. The liability of a surety on an executor's bond is not more extended. *Fletcher* v. *Sanders,* 32 Am. Dec. 96. Respondents are not estopped to deny the jurisdiction of the County Court. *Douglas* v. *Ferris,* 138 N. Y. 192; *Nevitt* v. *Woodburn,* 160 Ill. 203. The word jurisdiction in this connection means the power of the court to render the particular judgment entered in the particular case. *Peo.* v. *Tweed,* 60 N. Y. 559; *Ex parte Page,* 49 Mo. 291; *Coe Brass Company* v. *Savlik,* 93 Fed. Rep. 519; *Belford* v. *Woodware,* 41 N. E. Rep. 1097. It was not within the power of the County Court to bring the assets of this estate in controversy within its jurisdiction. The fact that these assets were within the jurisdiction of the Wisconsin court appeared upon the records of the Grand Forks County Court. This personality, which had its situs in Wisconsin, was beyond the jurisdiction of the Grand Forks County Court. *Peo.* v. *Seelye,* 146 Ill. 149; *Probate Court* v. *Hazard,* 13 R. I. 3. It is contrary to natural justice that the sureties on this bond should be estopped by a decree to which they were not parties, and of which they had no notice. *Lipscomb* v. *Postell,* 77 Am. Dec. 651; *Gibson* v. *Robinson,* 90 Ga. 756; *Bird* v. *Mitchell,* 28 S. E. Rep. 674; *Moore* v. *Alexander,* 1 S. E. Rep. 536; *Tierney* v. *Phoenix Insurance Company,* 4 N. D. 565. The will directed that the legacies and bequests should not be paid, but that the entire estate should be allowed to accumulate until the

principal and accrued interest of mortgages and investments should be sufficient to pay all legacies and bequests. This constituted Mc-Laughlin trustee. The duties of trustee were superadded to those of executor. *Tracy* v. *Murray,* 49 Mich. 35; *Dunning* v. *Bank,* 61 N. Y. 497; *Greenland* v. *Waddell,* 116 N. Y. 234; *Ward* v. *Ward,* 105 N. Y. 68; *Hamm* v. *Hamm,* 58 N. H. 70; *Palmer* v. *Noyes,* 48 N. H. 174; *In re Besley,* 18 Wis. 484; *Allen* v. *Kennedy,* 8 S. W. Rep. 882; *Givens* v. *Flannery,* 49 S. W. Rep. 182. Respondents are not liable for the several defaults of McLaughlin as trustee. § 4651 Rev. Codes; *Woerner Administration,* § 260; *Hinds* v. *Hinds,* 85 Ind. 312. A trusteeship is none the less such although the word trustee may not appear in the instrument creating it. *Packard* v. *Old Colony Railway Company,* 168 Mass. .92. In making the specific instruments McLaughlin acted as trustee and not as executor. *Tracy* v. *Murray,* 49 Mich. 55; *Tobias* v. *Ketchum,* 32 N. Y. 319; *Robert* v. *Corning,* 89 N. Y. 226; *Simpson* v. *Cook,* 24 Minn. 180; *Ross* v. *Barclay,* 18 Pa. St. 179; *Hodgin* v. *Toller,* 30 N. W. Rep. 1, 70 Ia. 21; *Naundorf* v. *Schurman,* 41 N. J. Eq. 14, 2 Atl. Rep. 602; *Lanning* v. *Sisters,* 35 N. J. Eq. 392; *Clark* v. *Tainter,* 7 Cush. 567; *Levitt* v. *Wooster,* 14 N. H. 550; *Givens* v. *Flannery,* 49 S. W. Rep. 182; *Allen* v. *Kennedy,* 8 S. W. Rep. 882. This plaintiff, as administrator de bonis non, the successor of McLaughlin, has the same power over this estate that McLaughlin as executor had, but plaintiff has no authority touching this trust as he did not succeed to any power or authority over this trust fund, it follows that McLaughlin as executor possessed none. *Ross* v. *Barclay,* 18 Pa. St. 179; *Dunning* v. *Bank,* 61 N. Y. 497; *Lanning* v. *Sisters,* 35 N. J. Eq. 392; *Greenland* v. *Waddell,* 116 N. Y. 234; *Clark* v. *Tainter,* 7 Cush. 567; *Hodgin* v. *Toller,* 30 N. W. Rep. 1. The time within which McLaughlin could legally act as executor under the will expired prior to the time of making the investments under consideration. § 3849 Wisconsin Statutes. The payments of the legacies was a duty imposed upon him as trustee and not as executor. *Calkins* v. *Smith,* 41 Mich. 409; *Allen* v. *Kennedy,* 8 S. W. Rep. 882. The presumption of law is that the executor settled up the estate within two years. *Ingram* v. *Ingram,* 4 Jones Law, 188; *Carroll* v. *Bosley,* 27 Am. Dec. 460. Where the same person is both executor and testamentary trustee, after the expiration of the statutory period, it is conclusively presumed that the property is held in the capacity of trustee. *Wier* v. *Peo.,* 78 Ill. 192; *Bell* v. *Evans,* 94 Ill. 230; *State* v. *Hearst,* 12 Mo. 365; *Carroll* v. *Bosley,* 27 Am. Dec. 460; *Jacobs* v. *Bull,* 26 Am. Dec. 72; *Able* v. *Brady,* 28 Atl. Rep. 817; *Wooley* v. *Price,* 37 Atl. Rep. 644; *Allen* v. *Kennedy,* 8 S. W. Rep. 882; *Givens* v. *Flannery,* 49 S. W. Rep. 182. Where the same person is executor and testamentary trustee he will be held to hold the trust estate in his capacity as trustee, whenever and as soon as he manifests such intention by any authoritative act. *Wilson* v. *Wilson,* 17 Ohio St. 150; *Cluff* v. *Day,* 124 N. Y. 195; *Cranson* v. *Wilsey,* 39 N. W. Rep. 9; *Tittman* v. *Greene,* 18 S. W. Rep. 885; *Babb* v. *Ellis,* 76 Mo. 450.

WALLIN, J. This action is brought against Stillman W. Mc-
Laughlin and his bondsmen to recover an alleged balance in the
hands of said McLaughlin as executor of the last will of Catherine
L. Wording, deceased. The action was tried to a jury, and at the
close of the testimony the trial court, on motion of the defendants'
counsel, directed the jury to return a verdict in favor of the defend-
ants. Such verdict was returned, and judgment was entered there-
on dismissing the action. Plaintiff appeals to this court from such
judgment.

A decision of the case will involve a consideration of the following
facts, which appear of record: The last will and testament of
Catherine L. Wording appointed said McLaughlin sole executor.
The deceased at the time of her death was domiciled in the county
of Racine and State of Wisconsin. The will was probated in the
County Court of Racine County, and letters testamentary were is-
sued to McLaughlin by said court on the 16th day of May, 1890;
and upon an authenticated copy of said will, and the order of said
County Court of Racine County admitting the same to probate, said
will was admitted to probate in the County Court of Grand Forks
County, North Dakota, on the 21st day of May, 1890. On the 21st
day of July, 1890, said McLaughlin delivered to the County Court
of Grand Forks County his bond as executor, which is the bond in
suit. Said bond was in due form, and was signed by the other de-
fendants as sureties, and by McLaughlin as principal. On the same
day said County Court of Grand Forks County issued ancillary let-
ters testamentary to said McLaughlin as executor under said will.
It further appears that on the 27th day of December, 1897, said Mc-
Laughlin filed his written resignation with said County Court for
Grand Forks County, and that said resignation was subsequently,
and on April 19, 1898, accepted by said court, and said McLaughlin
was then and there, by an order of said court, discharged as such
executor. On the day said resignation was filed by said McLaugh-
lin, and pursuant to a previous order made by said court in Grand
Forks County, said executor filed his final account of his proceed-
ings as executor, whereupon such proceedings were had in said
court upon said account that said court entered its order and decree
declaring in substance that said executor, as such, then had in his
hands a balance of the assets of the estate of the deceased, in the
sum of $8,407.91. On the same day (April 19, 1898) said court
in Grand Forks County entered an order making an allowance of a
certain amount as commissions and fees to said executor, to be paid
out of said balance in his hands, on condition, nevertheless, that said
balance, after deducting said fees and commissions, should be paid
into said court by said executor within a period of fifteen days from
the date of said final order and decree. None of the said orders or
decrees made on the 19th day of April, 1898, was appealed from,
nor have the same been judicially vacated or set aside in any manner.
Upon the hearing of said final account of said executor in the County
Court for Grand Forks County, as before stated, the said executor

and all the legatees under the will, and the County Court of Racine County, Wisconsin, were represented by their attorneys, respectively. Said final order and decree contains the following recital: "Upon a full hearing of said account, and by the consent of all parties present, it is ordered, adjudged, and decreed that said account be stated as follows:" Then follows a statement of the account, showing items of debit and credit, and also a balance of said estate in the hands of the executor in the amount above stated, but subject to a conditional reduction by an allowance of the sum stated as for fees and commissions as already explained. The action is brought to recover the balance of $8,407.91 as found by the County Court of Grand Forks County at said accounting. Plaintiff offered evidence tending to show, and the fact is not disputed, that no part of the balance so found has ever been paid by said executor, either into the County Court of Grand Forks County, or to the plaintiff in this action, or at all. All of the matters of fact as above narrated are substantially admitted by the answer, and are not controverted by the defendants, except that defendants allege that the allowance made in said final decree for services rendered by the executor was an absolute allowance, and was not made conditionally.

Defendants admit that plaintiff is administrator de bonis non of said estate, and allege that letters were issued to plaintiff as such by said count in Racine county, Wisconsin, on July 8, 1898, and allege that the said County Court of Grand Forks County did, in due form, make its order appointing plaintiff administrator of said estate, and issued letters of administration with the will annexed to plaintiff on or about October 11, 1898. Defendants allege in substance in their answer that said testatrix was domiciled in Racine County, Wisconsin, at the time of her death, and that under the laws of that state the County Court of Racine County aforesaid had full and exclusive jurisdiction in the matter of said estate over all the personal property belonging to said estate, wherever situated, and over all the real estate belonging to said estate, and situated in the state of Wisconsin; that after said will was probated in the County Court of said county of Racine, and before letters testamentary were issued by said court to McLaughlin as before stated, said McLaughlin filed a bond in said court in the penal sum of $60,000, in form as required in such cases by the laws of the state of Wisconsin, and conditioned in effect as follows: That said McLaughlin should administer, according to the terms of said will and the laws of said state, all the property belonging to said estate, and to render just and true accounts of his administration to said court in Wisconsin. It is further alleged by the answer that said court in Wisconsin has at all times retained its said jurisdiction over the estate, and that McLaughlin, as such executor, from time to time made and filed in said court accounts of his doings as such executor, and such accounts were so filed on the following dates: October 22, 1892; January 19, 1894; April 20, 1895; April 10, 1897; and January 24, 1898. The

answer further alleges that said court in Wisconsin has proceeded to exercise its jurisdiction over said estate, and in so doing has acted upon and allowed claims against the estate, in whole or in part, and that numerous claims so allowed have been paid by said executor upon the order of said court in Wisconsin. The answer further charges that the deceased did not have any estate of any kind or character in the State of North Dakota, save only two parcels of real estate, neither of which were situated in Grand Forks County, and that all of said estate, except said two parcels of land, consisted of real estate in other states than North Dakota, and in notes, mortgages, and other personal property. A copy of the will is made a part of the answer, which will made a large number of bequests and legacies to divers persons and public institutions. The only provision of the will which need be set out is as follows: "I expressly direct that none of the foregoing legacies or bequests are to be paid, but all my estate be allowed to accumulate until such time as the principal and accrued interest of all mortgages and other investments belonging to my said estate shall be sufficient to pay all said legacies and bequests." The answer further states, in effect, that, pursuant to the direction contained in said paragraph of the will, said executor had long prior to the date of the decretal order made by the County Court of Grand Forks County April 19, 1898, reduced to money all of the assets of said estate except the sum of $6,646.19, which item of uncollected assets the answer alleges has been duly turned over to the plaintiff in this action. The record shows that this item appears as a credit item in the final account filed at Grand Forks, and the same, being uncontroverted, was allowed by the court in the accounting. This item does not, however, enter into the balance found in the hands of the executor, and is not connected with the same. Defendants further allege that said executor, in the discharge of his trust under the will, and in obedience to the directions of the will, had, prior to the date of filing his said final account in the county court of Grand Forks County, from time to time invested and reinvested the moneys of said estate, and that said investments and reinvestments had aggregated about $50,500; that the net balance as found to be due the estate from the executor as stated in said decretal order is made up entirely of investments made as above stated between January 1, 1897, and December 28, 1897, and for which investments the executor claimed credits in his said final account, but which were disallowed by said court either in whole or in part; and that had all the investments made as aforesaid, and reported in said final account, been allowed and credited to said executor, there would have been no balance or alleged balance in the hands of said executor. Defendants further aver that said McLaughlin has accounted for and turned over to plaintiff all the moneys in his hands realized from the assets of said real estate, and has fully accounted as hereinbefore stated. The evidence offered by the defendants, so far as the same is material, was documentary, and consisted of authenticated exhibits numbered from 9 to 21, in-

clusive. Exhibits 9, 10, 11 and 12 were documents entitled in the County Court of Racine County, and were the accounts of said executor in the matter of said estate, verified by the executor, and filed in said court at Racine; and authenticated copies thereof were also filed in the county court of Grand Forks county. These exhibits, respectively, are dated October 1, 1892; January 11, 1894; April 18, 1895; January 1, 1897. Exhibit 14 is not dated, but it was filed in court at Grand Forks, December 28, 1897, and the same was entitled in the County Court of Grand Forks County. It is further referred to in Exhibit No. 15. Exhibit 15 embraces two papers. One is a duplicate of Exhibit 14, which exhibit was filed in said County Court at Racine on January 24, 1898. The second paper in Exhibit 15 is an order of the Racine County Court calling attention to certain inaccuracies and omissions shown in Exhibit 14; and said order required the executor to file in said court in Racine on or before March 1, 1898, a more complete and detailed account, and embracing certain particulars not satisfactorily set forth in the final account embraced in Exhibit 14, which account was and is a duplicate of the final account filed by the executor at Grand Forks, and upon which the County Court in Grand Forks county acted in making its decretal order on April 19, 1898, as already stated. Exhibit 16 embraces an order of the County Court at Racine fixing the time for the presentation of claims in said court against said estate, and an order stating in detail that certain claims were allowed. This exhibit was not filed at Grand Forks. Exhibits 17 to 21, inclusive, were copies of certain sections of the statute laws of Wisconsin, showing the jurisdiction and powers of the County Courts of that state in the matter of the estates of deceased persons.

Upon this evidence counsel for defendants moved for a directed verdict upon the following grounds: "(1) Because the undisputed evidence in the case shows that the shortage in the accounts of S. W. McLaughlin, which it is sought in this action to recover from defendants, was occasioned solely by reason of his default as trustee under the will of said Catherine L. Wording, and not by reason of any default or misconduct on the part of said McLaughlin as executor under the will of said testatrix. (2) Because the demand sought to be recovered from defendants herein arose through the defualt of S. W. McLaughlin as trustee under the will of Catherine L. Wording, and plaintiff, as administrator de bonis non of said estate, is not the successor of said McLaughlin as trustee under said will, and has not legal capacity to maintain any action touching the trust property or any of its proceeds. (3) Because the County Court of Grand Forks County, North Dakota, had no jurisdiction to make the order or decree of April 18, 1898, in evidence, for the reason that the defaults recited in said order or decree occurred in relation to personal property, the situs of which was at Racine, Wisconsin, where the testatrix died, and all of which personal property the County Court of Racine county, Wisconsin, always had and retained sole and exclusive jurisdiction, and which property was ob-

tained and held by said McLaughlin subject to the jurisdiction of said last named court, under and by virtue of his appointment as executor under the will of said deceased. (4) Because the evidence in this action is insufficient to show that the County Court of Grand Forks County, North Dakota, had any jurisdiction to make the order or decree of April 18, 1898. (5) Because no order or direction has ever been made or given by the Probate Court of Grand Forks County authorizing plaintiff to bring this action."

The decisive question for determination in this court is whether the direction of the trial court to return a verdict for the defendants was error. To this question, in our opinion, an affirmative answer should be given. It is our opinion that the County Court of Grand Forks County had authority to make the final order or decree which it entered in its records on April 17, 1898. It will be conceded upon this record that the sureties on McLaughlin's bonds are not in a position to question the authority of the court at Grand Forks to issue the ancillary letters testamentary which were issued, or to dispute the binding force of the bond which they have signed and upon which such letters were issued to their principal. The sureties, by signing the bond in suit, entered into an obligation of a specific nature, and one which is measured by the law itself. Section 6349, Rev. Codes, provides that the bonds of executors and administrators shall be "conditioned for the faithful discharge of all the duties of the trust imposed on him by law or by order of the court according to law." We are, therefore, to inquire in this case what duties were imposed by law, or by the lawful orders of the County Court of Grand Forks county, upon the executor for whom these local bondsmen became sureties. To determine the questions involved, account must be taken of certain matters which we deem to be of prime importance. It appears that Catherine L. Wording, deceased, was domiciled at the time of her death in the County of Racine, in the state of Wisconsin, and that her last will and testament appointed said McLaughlin executor under the will. The will was probated in the County Court of said Racine County, and original letters testamentary were issued in due form to said McLaughlin by said court. These letters were issued in May, 1890. It further appears that later in said month of May, McLaughlin presented an authenticated copy of said will, and of the order of court in Racine County admitting the same to probate, to the County Court for Grand Forks County in this state, and that the last-named court thereafter issued to McLaughlin letters testamentary, upon his filing in said court the bond here in suit. It further appears that certain property, both real and personal, belonging to the estate of Catherine L. Wording, deceased, and of the value of $30,000, was then situated in the State of North Dakota, and in the County of Grand Forks. There is no testimony in this record showing that any inventory of the assets of the deceased was ever made or filed either at Grand Forks or at Racine, Wisconsin; and hence this court is unable, upon this record, to determine either the character or total value of the

property, real or personal, which was situated either in the State of Wisconsin or of North Dakota when letters testamentary were issued in this state, or at any time subsequent to that date, except that it does appear, as a recital in the order admitting the will to probate in this state, that $30,000 worth of property was then situated in North Dakota. The fact that property, real or personal, belonging to the estate, existed in North Dakota, is not controverted, and is alleged in the petition for ancillary letters, and is found as a fact, and recited by the court in its order issuing such letters. The jurisdiction, therefore, of the Probate Court of Grand Forks County to issue such letters, and to do all and singular the things necessary to properly administer upon all the property coming into the possession of such ancillary executor by virtue of the letters so issued, cannot be questioned. It is elementary in such cases that the sureties upon the bond given locally and for ancillary purposes are responsible only for the faithful conduct of the ancillary executor with respect to duties assumed and property received by him pursuant to his local appointment. In other words, the sureties in such cases have a limited responsibility, and are not bound further. Nor would local bondsmen be responsible for any misappropriation of personal property found in this state, and belonging to the estate of the deceased, or of debts collected in this state by a foreign executor without suit, and while acting solely under the authority of letters testamentary issued in another state by the court of original jurisdiction. The title of all personal property, wherever situated, belonging to the testator, is vested by the will in the executor; and the executor has, by virtue of his title and his letters testamentary, an absolute right to reduce the personal property to possession, and to collect the debts. If it happens that there are local claims or specific liens against personal property, or debts situated or owing in a foreign state, these facts may necessitate the taking out of ancillary letters, and whenever this is done full responsiblity on the part of an ancillary executor and his bondsmen attaches as to such debts and property; and this is true where there is real estate belonging to the deceased situated in a state foreign to the domicile of the deceased. The following cases fully sustain these propositions: *Parsons* v. *Lyman*, 20 N. Y. 103; *Fletcher* v. *Sanders*, 32 Am. Dec. 96; *Baldwin's Appeal*, 81 Pa. St. 441; *McCord* v. *Thompson*, 92 Ind. 565; *In re Oritiz's Estate*, 86 Cal. 306, 24 Pac. Rep. 1034; *Fox* v. *Tay* (Cal.) 24 Pac. Rep. 855.

But counsel for the appellant strenuously contend that the liability of the executor and his local bondsmen is *res judicata*; that the determination made by the County Court of Grand Forks county on April 19, 1898, wherein that court adjudged that a balance of $8,407.91 was then in the hands of McLaughlin as executor of said estate, and further directing him to pay that amount into that court within a period of 15 days thereafter, is a final judgment of a court of competent jurisdiction, and as such is entitled to all the consideration which belongs to final judgments entered in courts

of record having jurisdiction. In other words, that such judgment, not having been vacated or appealed from, is final, and imports absolute verity. This alleged final judgment is in the record, and the same, together with the proof that it has not been complied with, constitutes the evidence upon which plaintiff claims to recover against the sureties named as defendants in this action. It must be conceded that a judgment entered by a county court of this state in any matter within its jurisdiction is of equal rank and dignity with other judgments entered by courts of record. It is well settled that such judgments can be attacked collaterally only upon jurisdictional grounds, and upon those of collusion or fraud, and in this case neither collusion nor fraud is claimed. It follows, therefore, that this judgment is final, unless the same can be successfully impeached upon jurisdictional grounds. No claim is made by counsel that the decretal order in question is assailable for want of jurisdiction upon any ground existing dehors the record; but, on the contrary, the precise contention is that the alleged defects in jurisdiction arise upon the judgment record itself, and are apparent upon its face. In our judgment, it is not vulnerable upon such grounds. The judgment record in evidence, when most liberally construed, embraces the following papers: (1) An exemplified copy of the will, and of the order of the County Court of Racine county and of Grand Forks county admitting the will to probate. (2) Certain accounts entitled in said estate and in the County Court of Racine county, sworn to by the executor, and from time to time filed in Racine county, and copies of which were filed in this state, and were on file at Grand Forks when the decretal order of April 19, 1898, was entered. These accounts are heretofore referred to as Exhibits 9, 10, 11, and 12. (3) The account denominated a "final account," filed at Grand Forks, December 28, 1897, and upon which the court at Grand Forks expressly bases its judgment of April 19, 1898. This account was, it appears, entitled in the County Court of Grand Forks county, and a duplicate of it was filed at Racine in January, 1898. This account is known in the record as "Exhibit 14." Why a duplicate of this exhibit was filed at Racine does not satisfactorily appear, nor do counsel attempt to explain the circumstance. It is a paper which indicates by its nature, as well as by its title and caption, that it properly belongs among the files of the court at Grand Forks. The County Court, by its judgment of April 19th, makes a statement showing fully and in detail all assets of the estate in McLaughlin's hands, and with which he was chargeable as executor, and also showing all credits due the executor in the matter of said estate. This statement is set out at length in the decretal order. The first part of such statement is as follows: "Said executor shall be charged with assets on hand at last report the sum of $34,619.04." The "last report" thus specifically referred to is an account of the executor filed in the County Court of Racine county, an authenticated copy of which was on file at Grand Forks, and had been filed there long prior to April 19, 1898. This report is in the record,

and is designated as "Exhibit 12." A reference to this exhibit discloses that the same bears date January 1, 1897, is verified by the executor, and by him filed with the court of original jurisdiction at Racine, and is entitled in the County Court of Racine county. This account (Exhibit 12) embraces an enumeration of and description of the assets of the estate in the hands of the executor at the date of this report. At this time, as appears by this account, the executor had in his hands a large amount in notes and accounts; also a certain amount in cash, and finally certain assets described in the account as follows: "Seventeen loans made since date of Exhibit 11 aggregating $14,040.00." Exhibit 11, here referred to, consists of the last preceding account of the executor, filed in Racine, and a copy of which was on file at Grand Forks when the decretal order of April 19th was made. Said statement of the executor's account, as embodied in the final adjudication made by the County Court of Grand Forks county, was further based upon said final account of the executor. This final account, like its immediate predecessor, showed that the executor at the date of the account had in his possession a large amount of personal property, consisting of notes, accounts, and collections made since the date of his last account, and cash; also, shows numerous investments made by the executor since the date of his last preceding account, viz: since January 1, 1897, and prior to the date of the final account, which, as has been stated, was filed December 28, 1897. The decretal order recites that certain of these last mentioned investments so made by the executor were scaled down, and some were disallowed in toto, and the balance which the court found to be in the hands of the executor, and which the court ordered the executor to pay into court at Grand Forks, was arrived at by deducting the disallowed items from the total credits as stated in the final account. The decretal order further proceeds to credit the executor in the sum of $3,000 as disbursed for attorney's fees, and with the further sum of $1,900.96 as fees and commissions allowed by way of compensation to the executor for his services as such; and these items were, as were all the items in the final account, computed by the court in reaching the balance now sued for. Another of these accounts is embraced in Exhibit No. 9. This account, as far as can be ascertained from this record, is the first account filed in the court at Racine by the executor. It is dated October 1, 1892. It shows the total value of the estate to be $30,429.35, and that it consists of notes, cash, and accounts on hand, and included, also, seven investments made by the executor, of the total face value of $7,620. It also shows among the assets of the estate four pieces of land, two of which were situated in North Dakota. None of the other accounts in the record embrace land. These sworn accounts as embraced in Exhibits numbered 9, 10, 11, 12, and 14, and an exemplified copy of the will, and of the order admitting it to probate in Racine, Wis., were on the files of the County Court at Grand Forks; and the same, in our judgment, are embraced in the judgment roll of the adjudication

made at Grand Forks on April 19, 1898. The County Court of Grand Forks county in making said adjudication made express reference to the final account, and to the account next preceding the same; and, in our opinion, there is a conclusive presumption, also, that it acted upon all papers and files then in the court which have a necessary bearing upon the determination which was then made. In disposing of the case, therefore, we shall consider and include in the papers constituting the judgment record in the County Court the several exhibits we have mentioned, as well as the will, and the. orders admitting the same to probate in the state of Wisconsin and in this state. From the judgment record of the County Court as thus defined, certain facts stand out in full relief. First, we find that the executor took out letters in the court of original jurisdiction, in which the deceased was domiciled at her death, and that subsequent thereto he took out ancillary letters in this state. In the absence of any inventory, the record is silent as to the circumstances under which the executor took possession of any of the property in this state belonging to the estate, or as to the character or description of the same, except, as before stated, it consisted of both real and personal property aggregating $30,000 in value, as already shown. The above statement of the facts which is epitomized from the record will, we think, suffice to present the legal questions which are decisive of the case.

It is the contention of the respondents' counsel that the County Court, in making the decretal order of April 19th, which was based upon the final account of McLaughlin as made and filed in that court, acted without jurisdiction. The argument is that this alleged want of jurisdiction may be predicated upon either one of two entirely independent grounds: First, it is claimed that the order in question, when considered in connection with the said accounts and duplicates of accounts,—including said final account,—discloses the fact that the adjudication assumes to pass upon and dispose of a large amount of property which had been taken possession of by McLaughlin by virtue of his original letters testamentary, and that, after being so taken possession of, McLaughlin made a list of such property, and filed the same in said County Court at Racine, Wis., and that said court had ever since retained exclusive jurisdiction over such property. A majority of this court upon the original presentation of the case were of the opinion that this contention of counsel was sustained by the record before us, and we then so held. But our later investigations, aided by the arguments of counsel made upon a rehearing of the case, has led us unanimously to an opposite conclusion. It is our opinion that the several accounts and duplicates thereof which were on file at Grand Forks when the decretal order was made do not show necessarily, much less conclusively, that the situs of the property affected by the order, or any part of it, was ever in the state of Wisconsin, or that the same was originally taken possession of by McLaughlin under his domiciliary letters. None of said accounts indicate on their face the author-

ity under which McLaughlin took the property referred to in them, respectively; nor do the same disclose the locus of the property listed in them when McLaughlin took the same into his possession. It is true that the original accounts, except the last and final account of the executor, were entitled and filed in the County Court at Racine, and that only duplicates thereof were filed at Grand Forks. It is conceded that this fact, standing alone, and wholly unexplained and unmodified by other circumstances, would tend strongly to show that the schedules of property embraced in said original accounts, respectively, consisted of property which McLaughlin had taken possession of under his original letters. Since it was his plain duty to list all property taken under the original letters, and file the list at Racine, the inference is very strong that property listed by him and filed at Racine was taken possession of under the letters issued by that court. But it should not be overlooked that an equally strong inference or presumption arises as to the source and situs of the property listed and embodied in the executor's final account, which, as has been seen, was originally filed in court at Grand Forks, and was also entitled in said court. It was the obvious duty of McLaughlin, under his ancillary letters, to take possession of and keep the property of the deceased found in this state, and only the property located here; it was further his plain duty to file with the court which issued the ancillary letters a verified list of the property obtained by him under such letters, and no other property; and finally it was his duty, on being cited into court for that purpose, to file his final account, embracing a list of all property taken under his local letters, and containing also a verified statement of what disposition, if any, he had made of such property, and no other property could properly have any place in such final accounting at Grand Forks.

We concede that the situs of property, and the source from which it was originally derived, may be indicated by the mere fact that it was listed, and the list filed in a certain court, out of which letters testamentary had issued; but in this case, where letters issued out of courts located in different jurisdictions, account must be taken of the schedules filed in both courts, and particular attention, we think, should be paid to the list of assets embraced in the executor's final account. If mere inferences are to control as to the situs of property, then the inferences to be deduced from filing lists of property in the court at Racine must be offset by those arising from filing the list embraced in the final account filed at Grand Forks. The record before us does not furnish any evidence, nor as much as a suggestion, that McLaughlin or any of the numerous counsel present at the hearing had upon the final account made any question touching the right of the court in which the hearing was had to adjudicate upon all the property and subject-matter contained in the final account there being considered. It does not appear that any one claimed at that hearing that any of the property then involved ever had a situs in the state of Wisconsin. Not only is this record silent

as to any suggestion that the point was made that the court at Grand Forks was wanting in jurisdiction for the reason stated, or for any other, but counsel for respondent tacitly admit that no point of this kind was raised at the hearing, but claim that the point is one which cannot be waived, inasmuch as it goes to the jurisdiction over the subject-matter. But we find evidence in this record that the property affected by the decretal order in question was property originally taken possession of under the ancillary letters, and such evidence is quite independent of the strong inference which arises from the fact that McLaughlin listed the property as property for which he was accountable as executor to the court in which he filed the final account. At the hearing had upon the final account the executor was represented by able counsel, and it appears that such counsel, in open court, and with the full concurrence of the other counsel present, agreed in terms that the final account of the executor then being considered by the court should be stated in that precise way in which the court stated the same, which account, so assented to and stated, embraced debits and credits, and showed the balance against the executor as hereinbefore stated. This assent of counsel in open court furnishes the best possible evidence, we think, that the ancillary executor, as such, was lawfully chargeable with all the property which he had listed in his final account, and which was disposed of by the decretal order in question. Nor can the fact be ignored that the record sent to this court does not purport to embrace all the evidence offered in the County Court at the hearing upon the final account. Nor does this record negative the idea that other evidence in addition to said several accounts and duplicates thereof was taken at the hearing in the County Court. Counsel for the defense offered certain evidence at the trial in the District Court which was on file in the County Court, but who shall say upon this record that such evidence as was offered at the trial was the entire proof submitted in the County Court? Certainly no such inference can be drawn from the record sent to this court. Concluding, upon this branch of the case, we find that the judgment roll and evidence offered at the trial do not necessarily, much less conclusively, show that any of the property affected by the decretal order had its situs in the state of Wisconsin, or that the same, or any of it, was originally taken possession of by the executor under his domiciliary letters. The County Court at the accounting was vested with authority to consider only the subject-matter of the property taken by the executor under the ancillary letters, and to make a decree disposing of such property, and none other. The exigency of the accounting demanded that the court should know and ascertain at the hearing just what property had been taken under the authority of the letters issued by such court. It is certainly legitimate to presume, until the contrary appears, that the court acted within its powers, and that in so doing it considered all the evidence bearing upon the matter of the situs of the property affected by the decree.

As we have said, no inventory of the assets of the estate found in North Dakota was put in evidence at the trial below, yet despite this fact we feel justified—nothing to the contrary appearing—in assuming that such inventory was made by McLaughlin, and in due course was filed in the court at Grand Forks. This presumption is re-enforced by the recital made in the order admitting the will to probate in this state, which, as has been seen, was to the effect that property both real and personal belonging to the deceased, and of the value of $30,000, was situated in this state when the will was probated here. The law required the executor to take possession of such property, and in due course to inventory the same, and file the inventory in the court granting the ancillary letters. It would manifestly be an unauthorized presumption to assume, in the absence of proof, that the County Court undertook to deal with and dispose of assets which had never been inventoried by the executor, or valued in that court as assets of the estate. We deem it to be our duty to take the opposite view, and assume the filing of an inventory, and that the court, in making its decretal order, dealt exclusively with the property listed in the same. If the County Court acted upon the property listed and inventoried in that court, the decretal order necessarily covered and affected only such assets as were taken into McLaughlin's hands under the letters issued out of that court, and over which that court had plenary jurisdiction.

But counsel contend, secondly, that the record made in the County Court at the accounting at Grand Forks shows upon its face that the court then and there assumed to adjudicate upon, and dispose of by its decretal order, certain property then in McLaughlin's hands, not as ancillary executor, but as testamentary trustee under the will. Counsel claim, and it seems to be conceded, that under the laws of the state of Wisconsin the County Courts do have jurisdiction over testamentary trustees, and that the County Courts of this state have no such jurisdiction, and hence that any action taken or decree made by the County Court at Grand Forks affecting trust property in the hands of McLaughlin in his capacity as trustee would be void on its face, as made without authority of law. The assumption that McLaughlin had in his hands at the time of the accounting certain assets of the estate, which were trust funds, and held as a trustee by him, rests wholly upon the fact that it appears on the face of the accounts, and particularly by the final account filed at Grand Forks, that McLaughlin had invested funds acquired by him as executor, and particularly that said account showed that such investments had been made to an amount exceeding $14,000 during the year next preceding the date of filing the final account; that such investments appeared in the final accounts as credits, and the same was represented by certain notes and securties then in McLaughlin's hands, and for which he was then willing to account as executor. McLaughlin claimed, of course, that such securities were in his hands as executor, and he gave himself credit for the same in his said account as executor. Nor is there a trace of evidence or reason to suppose that Mc-

Laughlin or any one else at the hearing in the County Court claimed or suggested that the securities in question were not in his hands in his capacity as ancillary executor, or that he held such securities as trustee. The court, however, declined to allow all of these securities as credits, but, after allowing some of them, disallowed others in whole or in part. It is claimed that the balance or deficit found against McLaughlin as executor was caused by scaling down the securities arising from the investments. Here, again, it is necessary to revert to the fact that neither the District Court nor this court is in a position to know all the data which were before the County Court at the accounting. As has been seen, the record shows nothing of the inventory filed at Grand Forks. It is silent, also, as to whether other oral or written testimony not in this record was in fact taken in the County Court. Counsel stand on the bare fact that McLaughlin himself stated in his final account, in effect, that he had in his hands as ancillary executor certain notes and securities which were taken as a result of investments of funds in his hands as executor. But is such a statement conclusive of the facts? We think otherwise. In such a case we think it would be the duty of the court to inquire into the matter, and, among other things, determine the preliminary fact whether the securities on hand were in fact taken as a result of investing the funds of the estate, or were some other securities. Again, such securities could not, against objection, be lawfully accepted in lieu of cash. If property inventoried had been converted into cash, the burden would be upon the executor to produce the cash; nor would any new securities answer in lieu of the money, except in cases like that at bar, where all parties interested in the estate came into court and voluntarily agreed to accept certain securities in lieu of money. It was, therefore, the duty of the County Court to refuse to allow and give credit for any new securities, except in so far as the securities were voluntarily accepted by all parties interested in the estate or its proceeds.

We have seen that neither the executor nor his counsel ever advanced the idea at the accounting that the proceeds of the estate obtained under the ancillary letters could be accounted for by simply taking credit as executor, and charging the same to himself in his capacity as trustee. No such charge was made in fact in the final account, and, as we have said, no such idea appears to have been broached at any time in the County Court. But if the executor at the accounting had sought to account for any of the proceeds of the estate by simply taking credit for the same as executor, and charging them to himself in his capacity as a trustee, we think such a charge could not have been upheld. The court at Grand Forks was wholly devoid of authority to deal with the executor in his trustee capacity, and that capacity was wholly foreign to the relation created by the ancillary letters. Under such letters the executor's duties were circumscribed. After paying local claims, if any, the ancillary executor was limited to the mere matter of converting the proceeds of the estate received under his letters into money, and then, after

making his final account, to turn over the net proceeds of the estate to the domicilliary executor, to be distributed and disposed of under the will by the court of original jurisdiction. Thus it will be seen that the ancillary letters conferred no powers upon McLaughlin as a testamentary trustee; nor did the court which issued such letters have the least authority to deal with McLaughlin as trustee under the will, and, as we have shown, the court at Grand Forks did not attempt to administer the trust, or to deal with McLaughlin in his capacity as trustee under the will. The court simply refused to give the executor credit for certain securities which McLaughlin had at the accounting, and which McLaughlin had in his account given himself credit for in his capacity as ancillary executor. We think the action of the County Court was entirely proper, and could not have been different under the law. We are therefore of the opinion that the judgment offered in evidence at the trial in the District Court did not show on its face that the County Court was without jurisdiction to enter the decretal order of April 19, 1898. It must follow from what has been said that the District Court erred in directing a verdict for defendants upon the ground that the records of the County Court put in evidence showed on their face that the County Court was without jurisdiction to enter the decretal order which is the basis of this action. A new trial will therefore be ordered.

The judgment sued on not being invalid for want of jurisdiction, counsel contend that it is merely prima facie evidence of its contents, and is not conclusive. We shall hold that the judgment is conclusive, and imports the same degree of verity as judgments entered by courts of record in this state. All doubts upon this point are absolutely settled by section 6186, Rev. Codes 1899, which declares, "The proceedings of a County Court in the exercise of its jurisdiction are construed in the same manner and with like intendments, as the proceedings of courts of general jurisdiction, and to its records, orders and decrees there is accorded like force, effect and legal presumptions as to the records, orders, judgments and decrees of courts of general jurisdiction." But if the judgment were mere prima facie evidence of its contents, and hence disputable, we should hold, upon grounds already stated, that the County Court was fully justified upon the evidence in entering the judgment which was entered by the full consent of all the parties interested in the estate.

We might safely place our ruling upon an additional ground, not before mentioned. It is this: We have seen that there is not a particle of evidence in this record that at any time prior to the accounting in question, or since that time, McLaughlin ever claimed to act in his capacity of trustee under the will. It is equally true that no evidence is in this record tending to show that he had taken the steps which the law requires to be taken in order to relieve himself or his bondsmen from liability for his acts done as ancillary executor. It seems to be settled by the decided weight of the adjudications that where an executor is also a trustee under a will,

and qualifies as executor, he and his sureties will be bound until such time as the executor shall account as executor and qualify as a trustee. There must be some open and notorious act done by the executor whereby it may be known that the line has been crossed which separates the capacity of the executor from that of the trustee. We cite only a few of the many authorities supporting this proposition. *Prior* v. *Talbot,* 10 Cush. 1; *Conkey* v. *Dickinson,* 13 Metc. (Mass.) 51; *Newcomb* v. *Williams,* 9 Metc. (Mass.) 525; *Miller* v. *Congdon,* 14 Gray, 114; *White* v. *Ditson,* 140 Mass. 351, 4 N. E. Rep. 606; *Groton* v. *Ruggles,* 17 Me. 137; *Williams* v. *Cushing,* 34 Me. 370; *In re Higgins' Estate* (Mont.) 39 Pac. Rep. 507, 28 L. R. A. 116; *Bellinger* v. *Thompson* (Or.) 37 Pac. Rep. 714; *Cranson* v. *Wilsey* (Mich.) 39 N. W. Rep. 9; *Newport Probate Court* v. *Hazard,* 13 R. I. 1; *State* v. *Branch,* 134 Mo. 592, 36 S. W. Rep. 226.

But it is urged that the sureties on the executor's bond who did not appear at the accounting, and were not cited to appear, are not bound by the adjudication made at the accounting. There is some authority sustaining this contention, and holding that the questions settled as against the executor may be relitigated in an action brought against the bondsmen, and that in such an action the record of the adjudication is only presumptive and not conclusive. See *Lipscomb* v. *Postell,* 38 Miss. 476; *Gibson* v. *Robinson,* 90 Ga. 756, 16 S. E. Rep. 969; *Bird* v. *Mitchell,* 101 Ga. 46, 28 S. E. Rep. 674. But, in our judgment, the better rule, and that supported by a very decided weight of authority, is to the contrary. In *Wolff* v. *Shaeffer,* 74 Mo. 154, the court said, "The surety on an administrator's bond is concluded by, and cannot attack collaterally, a final settlement from which there has been no appeal. See, also, *Dix* v. *Morris,* 66 Mo. 614; *State* v. *Creusbauer,* 68 Mo. 254; *Slagle* v. *Entrekin,* 44 Ohio St. 637, 10 N. E. Rep. 675; *Wehrle* v. *Wehrle,* 39 Ohio St. 365; *Casoni* v. *Jerome,* 58 N. Y. 315; *Braiden* v. *Mercer,* 44 Ohio St. 339, 7 N. E. Rep. 155; *Irwin* v. *Backus,* 25 Cal. 214; *Heard* v. *Lodge,* 20 Pick. 53; *Garber* v. *Com.,* 7 Pa. St. 265; *Salyer* v. *State,* 5 Ind. 202; *People* v. *White,* 11 Ill. 341; *Ralston* v. *Wood,* 15 Ill. 160; *Holden* v. *Curry* (Wis.) 55 N. W. Rep. 965; *Jenkins* v. *State* (Md.) 23 Atl. Rep. 608. This rule is firmly settled in Wisconsin. See *Meyer* v. *Barth,* 72 N. W. Rep. 748; *Shepard* v. *Pebbles,* 38 Wis. 373. Of course, this rule does not preclude a collateral attack upon a final judgment when made by the bondsmen upon the ground of fraud and collusion, but in the case at bar there is no fraud or collusion charged. But respondents' counsel concede that, while the rule as above stated is established by a preponderance of authority, the same is not sound in principle, and that it has been swept away and the opposite rule established by the statute; citing chapter 69 of the Civil Code, which defines and regulates contracts of indemnity. While it is true that bonds of executors, administrators, and guardians are obligations in their

nature closely allied to indemnity contracts, nevertheless we are clear that a decided preponderance of authority will be found to distinguish such bonds from contracts of indemnity. Some authorities declare that these bonds are simply exceptions to the rule, while other courts declare that they differ radically in their nature from indemnity contracts, and hence cannot be classed as exceptions, but stand entirely upon their own terms and legal effect. In New York the reason of the distinction, as stated in *McMahon* v. *Smith*, 24 App. Div. 25, 49 N. Y. Supp. 93, is that the surety voluntarily places himself in privity with the administrator or executor, and is therefore bound by any decree that the surrogate has jurisdiction to make. The majority rule is upheld by the courts of Alabama, Arkansas, Louisiana, Maine, Massachusetts, Michigan, Missouri, New York, Oregon, Pennsylvania, South Carolina, and Texas. The authorities from the states mentioned will be found in note 2, p. 901 (2d Ed.) 11 Am. & Eng. Enc. L. The judgment will be reversed, and a new trial ordered. All the judges concuring.

BARTHOLOMEW, C. J. I concur in the result announced in the opinion formulated by Justice Wallin. I do not believe, and for the reasons stated by my associate, that these defendants can be heard to say that their principal held the property for which he was charged by the County Court of Grand Forks county in the capacity of testamentary trustee, and not as executor. Nor do I believe that these defendants can assail the final order made by said court on any grounds other than fraud, collusion, or want of jurisdiction. They do assail it in this case for want of jurisdiction of the subject-matter. We have nothing before us except the documentary record upon which such final order was based. We must indulge in support of that order every presumption that would be indulged in support of the final judgment of a court of general jurisdiction. Rev. Codes, § 6186. It follows that jurisdiction must be presumed unless the record conclusively shows the want of jurisdiction. I wish to examine that record briefly, because the principal opinion does not clearly disclose the reasons that control my decision.

Catherine L. Wording died testate about March 1, 1890, at Racine county, in the state of Wisconsin; she being domiciled in said county at the time of her death. By the terms of her will, one McLaughlin, a resident of Grand Forks county, in this state, was named as sole executor. Such will was duly proved and admitted to probate by the proper court in Racine county, Wis., on May 6, 1890, and bond required. The record does not show whether any bond was given or not, but, as will appear, it does show that the executor proceeded with his duties as such in such court. In due time a copy of the will, with proof of probate thereof, was filed in Grand Forks county, in this state, with the petition of the executor asking that the will be admitted to probate in said county. The petitioner alleged that there was real and personal property belonging to the estate, and situate in this state, of the value of $30,000. Such

proceedings were had that on May 21, 1890, said will was admitted
to probate in said county, the order reciting that there was property
of said estate in this state; and on July 1, 1890, the bond of said
executor in the sum of $60,000, with these defendants as sureties,
was duly filed and approved. As these defendants, if liable at all,
can only be held for some default in connection with the ancillary
executorship, it becomes pertinent to inquire what court, in legal
contemplation, and in the absence of special circumstances, had juris-
diction over the personal property of said estate. We get no aid
from any inventory, because, so far as this record shows, no in-
ventory was filed in either court. It is conceded that for the purpose
of ultimate distribution the domiciliary court has exclusive juris-
diction, but denied that such court has exclusive jurisdiction for
ordinary administration purposes. I think, however, that the ordin-
ary rule as to personal property should be applied in all such cases,
and that the situs of the personalty must follow the domicile of
the owner, and I do not think this is changed in the least by the
fact that such personal property consists of evidences of debts owing
by parties resident in other states. *Doolittle* v. *Lewis,* 7 Johns.
Ch. 45; *Vroom* v. *Van Horne,* 10 Paige, 549; *Middlebrook* v. *Bank,*
41 Barb. 481; *Parsons* v. *Lyman,* 20 N. Y. 103. And when the
domiciliary executor receives a voluntary payment from a debtor in
a foreign jurisdiction, no ancillary executor having been appointed
in such jurisdiction, the payment so received must go into the account
of the domiciliary executor. See cases last cited, and also *Baldwin's
Appeal,* 81 Pa. St. 441; *McCord* v. *Thompson,* 92 Ind. 565; *In
re Ortiz's Estate,* 86 Cal. 306, 24 Pac. Rep. 1054. It does not
follow from this that such executor could satisfy a mortgage in a
foreign jurisdiction, or assign such mortgage. Another rule that is
well settled, and I think universal, is that, when it becomes necessary
to go into the courts of a state in order to enforce claims of an
estate of one who died domiciled in another state, a domiciliary ex-
ecutor will not be recognized. For this reason the existence of debts
in another jurisdiction has always been held sufficient ground for an-
cillary proceeding. See Schouler, Ex'rs, § 24, and cases cited. And,
no doubt, after ancillary proceedings had been had all property
coming to the hands of the ancillary executor as such, whether by
voluntary or enforced payment, must be accounted for in the an-
cillary court. Now, in the case at bar the general jurisdiction of
the County Court of Grand Forks county cannot be questioned, nor
can it be questioned that there was property belonging to the estate
within that jurisdiction. The difficulty lies in excluding the domi-
ciliary court from jurisdiction over any of the property involved in
the final accounting made by the ancillary court. After the approval
of the bond and granting of ancillary letters, as hereinbefore stated,
the next document that appears in the record is known as "Exhibit
9." It is an authenticated copy of account filed by the executor,
entitled in the County Court of Racine county, Wisconsin, "In the

Matter of the Last Will and Testament of Catherine L. Wording, Deceased." It bears date October 1, 1892. This was more than two years after the issuing of both the domiciliary and ancillary letters. The account shows notes and accounts on hand, as per itemized list, $16,820.43; cash collected, $13,186.28. It also recites cash, as on hand (at some past statement or accounting, presumably) in the sum of $1,561.82. It also shows disbursements for funeral expenses and sundry investments. As stated, this report was made to the Wisconsin court, and purported, of course, to deal with property received by the executor by virtue of his appointment by such court. Yet there is nothing whatever in the report to show from what source any of this cash was received. It is physically possible that it might have been received in the ancillary jurisdiction after the issuance of the ancillary letters. It is possible, too, that all the notes and accounts mentioned may have been owing by residents within the ancillary jurisdiction. In other words, it is possible that the Wisconsin court had no jurisdiction of any of the assets set forth in the report. On April 17, 1894, an exemplified copy of this report was filed in the case in the County Court of Grand Forks county. On the same date an exemplified copy of the next report made to the Wisconsin court (Exhibit 10) was filed in the County Court of Grand Forks county. This report was filed in the Wisconsin court January 19, 1894, and is of the same general nature as the preceding report, and shows notes and accounts on hand, over $9,000 collected since last report, a number of investments, and claims to the amount of $1,432.91 against the estate paid. Why these reports were filed in both courts is matter of conjecture. It was not possible that both courts should have jurisdiction over the same specific property. The filing in one court or the other was a useless act. True, after the assets in the ancillary jurisdiction had all been reduced to cash, or to a condition proper for distribution, and a final settlement of the estate had in the ancillary jurisdiction, the balance then on hand must be passed to, the domiciliary court for final distribution. Then for the first time does the jurisdiction of that court attach. As I have stated, it is possible that all of this cash and these notes and accounts properly belonged in the ancillary jurisdiction. True, it seems from this last report that the executor had been using cash in his hands to pay claims in the Wisconsin court. But I will presume, in support of this judgment, that in so doing he exceeded his authority. Exhibits 11 and 12 are reports of the executor made in the Wisconsin court, and an exemplified copy subsequently filed in the Grand Forks County Court. They do not differ in their general tenor from the prior reports already mentioned. The next report is Exhibit 14, made in response to the order of the ancillary court, and filed first in that court, and subsequently in the Wisconsin court. It was upon the coming in of this report that the final order was made. This final order (Exhibit 7),

N. D. R.—29

after scaling down or disallowing certain investments reported, continues: "Upon a full hearing of said account, and by the consent of all parties represented, it is ordered, adjudged, and decreed that said account be stated as follows: Said executor shall be charged with assets on hand at last report the sum of," etc. This clearly shows that this final order was based upon and related to the specific property covered by Exhibit 12,—a report made to and filed originally in the Wisconsin court, and which, in its turn, was based upon preceding reports all made to and originally filed in that court. But all presumptions must be indulged in favor of the validity of this final order. We cannot hold that it was made without jurisdiction unless it conclusively so appears from the record. In my judgment, it does not so appear, and I do not base this upon the assumption that there may have been evidence dehors the record showing jurisdiction. I think the record rebuts anything of that kind. Nor do I base it upon the assent of counsel to the order. That assent could not confer jurisdiction over the res. I base it simply upon the record as herein discussed. The judgment is properly reversed.

(83 N. W. Rep. 875.)